(No. 31112.—

HARRISON SHEET STEEL COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN ABRAHAM, Plaintiff in Error.)

*Opinion filed January 18, 1950.*

IRVING M. GREENFIELD, of Chicago, for plaintiff in error.

SAMUEL SCHMETTERER, of Chicago, for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

John Abraham filed an application for adjustment of claim with the Industrial Commission alleging that he sustained an accidental injury to his left elbow on June 7, 1946, arising out of and in the course of his employment by the Harrison Sheet Steel Company. An arbitrator found that the injury was compensable and awarded compensation of $18 per week for a period of 5 weeks for temporary total incapacity. In addition, the arbitrator found that claimant, as the result of a compensable injury sustained on August 8, 1944, had suffered a five per cent permanent loss of use of his left arm and that, taking the prior injury and the injury of June 7, 1946, together, claimant now has a forty per cent permanent loss of use of his left arm. Consequently, claimant was also awarded compensation at the rate of $18 per week for the further period of 78¾ weeks for thirty-five per cent permanent loss of use of his left arm arising out of the injury of June 7, 1946, computed according to the provisions of section 8(e)(17½) of the Workmen's Compensation Act. (Ill. Rev. Stat. 1949, chap.

48, par. 145(e)(17½).) Upon review, the Industrial Commission adopted the findings of the arbitrator and affirmed the award. Thereafter, the circuit court of Cook County reversed and set aside the award of the Industrial Commission. We have allowed claimant's petition for a writ of error for a further review of the record.

The facts essential to a determination of the issues may be summarized, as follows: At the time of the accident, claimant had been in the employ of the steel company as a general factory worker for about two years and was then sixty years of age. The accident occurred on June 7, 1946, while claimant, at the direction of his foreman, was assisting another employee in moving several cabinets. One cabinet struck him in the left elbow and knocked him to the floor. Claimant suffered a laceration on the under side of his elbow, the cut being three inches in length and extending through the superficial and deep tissue into the bursa adjoining the bony prominence of the elbow, opening the bursa and causing the bursal fluid to escape. The employer took claimant to Dr. E. H. Anderson, who closed the wound with approximately fifteen sutures. Subsequently, Dr. Anderson administered thirty-five treatments before discharging claimant as a patient and directing him to return to work on August 17, 1946.

Claimant returned to work as directed. A few days later, he noticed a liquid discharge oozing from the wound. This time, the employer sent claimant to Dr. H. R. Weinzimmer, who found that the wound was inflamed. Dr. Weinzimmer treated claimant from August 23 to September 21, 1946.

The record further discloses that claimant had sustained a prior injury to his left elbow on August 8, 1944, while employed by another company and that, upon application for adjustment of claim, an arbitrator had awarded him compensation at the rate of $17.63 for a period of 11¼ weeks for a five per cent permanent loss of use of his left

arm. While the petition for review was pending before the Industrial Commission, claimant and his former employer entered into an agreement to settle the claim for $150. Upon presentation of the settlement agreement to the Industrial Commission, it was approved and the pending proceeding was dismissed. The foregoing evidence was introduced by claimant. The employer sought to introduce the entire contents of the file in the prior proceeding, including the transcript of testimony and X-ray exhibits, but this evidence was excluded.

The only disputed fact at the hearing before the arbitrator was the nature of the injury of June 7, 1946, and the degree of permanent disability, if any. Claimant testified that, following the accident in 1944, his arm had improved and that he had no difficulty whatever with it. He further stated that, after the present accident, his left arm was stiff; that he could neither bend it fully nor straighten it out; that it is sore and painful when he tries to lift anything, and that he has a grinding sensation in the bones of the elbow joint.

Dr. George C. Coe, testifying for claimant, related that he examined claimant on February 3, 1947, and found that his left elbow was swollen, particularly under the bony prominence of the elbow, and that all movements of the arm, both actively (movement by the patient) and passively (movement by the doctor), were limited. According to Dr. Coe, his X-ray films revealed an area of calcification, or bony spur, adjacent to the head of the outer bone of the forearm, osteoporosis (porous condition of bone tissue) in the bones of the elbow joint, and a narrowing of the joint space between the bones of the upper and lower arm, indicative of an old fracture of the head of the outer bone of the forearm. Testifying as an expert witness, Dr. Coe stated that, in his opinion, with a reasonable degree of medical certainty, the second injury superimposed upon the first injured area initiated the symptoms complained of by

claimant and confirmed by his own objective finding of loss of movement in the elbow; that both accidents are involved in the osteoporosis; that the widespread poractic changes could result from the second accident, and that the present condition of the elbow is permanent.

The three witnesses for the employer were Dr. Anderson, Dr. Weinzimmer, and Richard Snyder, treasurer of the company. Dr. Anderson, the first attending physician, testified that X rays taken at the time of the accident showed an old healed chip fracture of the head of the outer bone of the forearm, a spur formation and no evidence of recent osteoporosis. He stated that he had not examined claimant subsequent to August 17, 1946, when the wound had healed and was not infected, and that there was then no loss in passive motion in the elbow joint, although claimant did restrict active motion on account of pain which he, as a doctor, was at a loss to understand.

Dr. Weinzimmer testified that, on August 23, 1946, there was an inflammatory process surrounding the edges of the wound and that, about one month later, on testing for movement in the arm, he found there was some loss in complete extension and flexion, passively as well as actively, in the elbow of the left arm. The same restriction of movement was observed at a special examination conducted by him on May 15, 1947, at the request of the employer. X rays taken by Dr. Weinzimmer also revealed the old chip fracture of the outer bone of the forearm, a bony spur and osteoporosis. The doctor was unable to state whether the bony spur antedated the second injury, but added that the spur, with arthritis, could be one of the factors contributing to the limitation of motion in the elbow joint. Snyder testified he saw claimant doing general work after his return to the plant and that claimant did not perform his work any differently than he did prior to the accident. On cross-examination, however, Snyder admitted that he spent only one hour a day at the plant, which con-

sisted of five or six adjoining buildings, and that he only spent a few minutes of each day in the building where claimant worked.

The judgment order of the circuit court does not specify any reasons for reversing and setting aside the award of the Industrial Commission. As grounds for reversal of the judgment of the circuit court, claimant contends that the decision of the commission is not contrary to the manifest weight of the evidence and that the commission did not err in computing the reduction in the present award by reason of the prior injury. The employer does not suggest any other issues and devotes all its efforts to refuting the two contentions made by claimant. In urging that the decision of the commission was contrary to the evidence, the employer argues (1) that the evidence shows claimant suffered no permanent disability because he was able to perform his work in the same manner as before the accident; (2) that an award is limited to compensation to an injured employee for his reduced earning capacity, of which there is no evidence in the case at bar, and (3) that the evidence shows the permanent partial loss of use, if any, of the arm resulted from the prior injury and not from the accident of June 7, 1946.

Clearly, the testimony of Snyder, the treasurer of the company, that claimant, upon his return to work, performed the same duties as he had previously and in no different manner is wholly insufficient to overcome the testimony of claimant, Dr. Coe and Dr. Weinzimmer as to the limitation of movement in claimant's left arm. Secondly, the assertion that compensation for partial permanent loss of use of a member must be determined upon the basis of loss of earning power finds no support in the Workmen's Compensation Act. The award to claimant was made under the specific loss schedule found in section 8(e). (Ill. Rev. Stat. 1949, chap. 48, par. 145(e).) The use of reduction in earning power as a method of determining awards is

limited to injuries which are compensable under section 8(d). (Ill. Rev. Stat. 1949, chap. 48, par. 145(d).) Section 8(d) pertains to injuries partially incapacitating an employee from pursuing his usual and customary employment and specifically excludes injuries compensable under the schedule in section 8(e).

With respect to the assertion that the claimant's disability, if any, arose out of the first injury and that there is no evidence connecting it with the second injury, we make the following observations: Claimant's testimony that his left arm improved after the prior injury and that he had no difficulty whatever with it is not contradicted. Claimant and Dr. Anderson both stated that claimant suffered active loss of movement in the left elbow following the present injury. Of the three physicians who appeared as witnesses, only Dr. Anderson did not find any passive loss of motion in the elbow and he did not examine claimant after August 17, 1946. Claimant testified that his loss of motion in his left elbow followed the second injury and neither of the two attending physicians who appeared as witnesses for the employer were able to make a positive statement that disability arose out of the first injury. In view of all the facts and circumstances, we are unable to say the finding of the Industrial Commission that claimant now has a permanent partial loss of forty per cent of the use of his left arm is contrary to the manifest weight of the evidence.

The only remaining contention advanced by the claimant is that the Industrial Commission did not commit error in deducting the award for the injury to the left arm in 1946 by limiting the deduction to the five per cent permanent partial loss of use found by the arbitrator upon the claim for the injury in 1944 to the same arm. Section 8(e)(17½) of the Workmen's Compensation Act provides, as follows: "In computing the compensation to be paid to any employee who, before the accident for which he claims compensation,

had before that time sustained an injury resulting in the loss by amputation or partial loss by amputation of any member, including hand, arm, thumb or fingers, leg, foot or any toes, such loss or partial loss of any such member or the sight of an eye shall be deducted from any award made for the subsequent injury, and for the permanent total loss of use or the permanent partial loss of use of any such member for which compensation has been paid, then such loss shall be taken into consideration and deducted from any award for the subsequent injury." Ill. Rev. Stat. 1949, chap. 48, par. 145(e)(17½).

The narrow question presented for determination is the proper method of computing a deduction where the award of the arbitrator for the prior injury was contested and, upon review before the commission, the proceeding was dismissed following a commission-approved settlement agreement. In this connection, it is conceded that where a prior injury results in a final award, the prior award constitutes the only proper method of computing a deduction based on the prior injury. (*Caterpillar Tractor Co. v. Industrial Com.* 397 Ill. 474.) The employer argues, however, that the prior award here involved was not final, first, because it was contested and, upon review, either party had the right to introduce additional evidence before the commission and, secondly, because the proceeding was dismissed while pending upon review. From this premise, the employer has at all times contended that it was entitled to introduce any and all evidence pertaining to the extent of the prior injury and that all the facts and circumstances of the prior injury should be taken into consideration in computing the amount of the deduction. The employer's position is, of course, that the prior injury resulted in a far greater loss of use than the five per cent found by the prior arbitrator and used by the commission in computing the loss resulting from the subsequent injury.

Assuming, without deciding, that claimant's prior award was not final, the employer must still fail in its effort to compel the commission to engage in an independent inquiry relative to the extent of the first injury. Subparagraph 17½ of section 8(e) provides that where the prior injury resulted in "the permanent partial loss of use of any such member for which compensation has been paid, then such loss shall be taken into consideration and deducted from any award for the subsequent injury." (Ill. Rev. Stat. 1949, chap. 48, par. 145(e)(17½).) Deductible prior losses of the partial use of a member are thus restricted to prior losses "for which compensation has been paid." (*Caterpillar Tractor Co.* v. *Industrial Com.* 397 Ill. 474.) It follows, therefore, that the only reasonable and logical method of computing an authorized deduction resulting from a prior compensated loss is to use the compensation paid for the prior injury. Any other method presents the possibility of deductions either smaller or larger than the amount of compensation previously paid under an approved settlement contract. Moreover, a commission-approved settlement agreement is, in legal effect, an award. (*Dyer* v. *Industrial Com.* 364 Ill. 161; *Hartford Accident and Indemnity Co.* v. *Industrial Com.* 320 Ill. 544.) In addition, it is, in legal effect, a final award, because approval is granted or withheld not by an arbitrator, but by the Industrial Commission itself. Consequently, a commission-approved settlement contract has the same legal effect as a final award and constitutes a proper method for computing a deduction for a prior injury from an award for a subsequent injury. Since the compensation paid to claimant under the settlement contract was less than the five per cent loss of use found by the prior arbitrator and relied upon by the commission in deducting the first injury from the present award, the employer is in no position to complain of the action of the commission.

For the reason that the decision of the Industrial Commission is not contrary to the manifest weight of the evidence and the commission did not commit any error in computing the deduction for the prior injury, the judgment of the circuit court must be reversed and the cause is remanded, with directions to enter judgment confirming the decision and award of the Industrial Commission.

*Reversed and remanded, with directions.*