LLOYD BAILEY, Appellee, v. THE INDUSTRIAL COMMISSION *et. al.* (Consolidated Aluminum Company *et al.*, Appellants).

Fifth District (Industrial Commission Division) No. 5—84—0435WC

Opinion filed September 17, 1985.

BARRY, J., concurring in part and dissenting in part.

Neil F. Hartigan, Attorney General, of Springfield (Robert W. Cadagin, Special Assistant Attorney General, of Collinsville, of counsel), for appellant Second Injury Fund.

Paul A. Guzzardo, of Calvo & Guzzardo, of Granite City, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

The basic question posed by this appeal is whether a lump-sum settlement contract entered into between a claimant and his employer is binding upon the Second Injury Fund (Fund) (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(f)) when the contract is approved by the Industrial

Commission over the objection of the Fund and the contract specifically provides that the Fund is not a signatory to the contract and is contesting the same. We hold in the negative and reverse the circuit court of Madison County.

A subsidiary issue on appeal is the finding and order of the Commission that the claimant had failed to prove a permanent loss of 100% of the use of his left arm. This issue was not reached by the trial court and is not addressed by the claimant on review.

Some recitation of the factual background is required for a full understanding of the issues.

In 1954 claimant sustained a work-related injury which resulted in the amputation of his right arm. He received compensation for permanent and complete loss of the use of that arm. On July 30, 1976, claimant sustained an injury to his left arm in the course of his employment with respondent Consolidated Aluminum Company (Consolidated). On February 14, 1980, the Industrial Commission awarded claimant benefits for 70% disability of the left arm; this award was confirmed by the circuit court of Madison County. It is not contested in this appeal.

On May 13, 1981, claimant filed a petition under sections 8(a) and 19(h) of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1983, ch. 48, pars. 138.8(a) and 138.19(h)), naming Consolidated and the Treasurer of the State of Illinois as custodian of the Fund as respondents. The petition alleged that claimant's disability had increased to the point of total disability since the award of 70% disability.

On October 26, 1982, a hearing was held on the petition before Commissioner Miller; both respondents were represented at the hearing by counsel. Claimant testified that he had been unemployed since his prior testimony before the Commission in July 1979. He stated that since that time there had been further deterioration in the condition of his left arm, resulting in weakness and numbness in the left hand. He had constant numbness in the little and ring fingers. Claimant described further shrinkage or atrophy in his hand and arm muscles. He had lost some ability to grip and lift things, although he had driven himself to the hearing that day. Claimant also complained of very sharp pains in his elbow, for which he took medication.

The deposition of Xamnan Tulyasthien, an orthopedic surgeon, was introduced at the hearing. The deposition was taken on August 20, 1982; counsel for the Fund was not present at the deposition hearing. Dr. Tulyasthien began treating claimant in 1976 following the injury to claimant's left elbow. After a couple of visits, the doctor diag-

nosed ulnar nerve palsy and carpal tunnel syndrome. Claimant was advised to undergo surgery to correct those problems but declined. Claimant continued to have numbness and weakness in the hand, and the elbow pain also persisted.

Dr. Tulyasthien reexamined claimant in June 1981, at which time electromyogram and nerve conduction tests were performed. The test results confirmed the diagnoses of ulnar nerve palsy and carpal tunnel syndrome. The examination revealed tenderness of the ulnar nerve in the left elbow with positive Tinel Sign. However, there was full flexion and extension of the left elbow and full range of motion in the left shoulder. Claimant had atrophy of the thenar hypothenar eminence of the hand and atrophy of the first dorsal interosseous muscle and abductor digiti quinti of the hand. There was slight weakness of abduction and adduction of the fingers and decreased superficial sensation of the little and ring fingers. It was Dr. Tulyasthien's opinion that the injury to claimant's elbow in 1976 was not causally related to the carpal tunnel syndrome. The deponent indicated that the atrophy in the hand muscles seemed worse since 1976. He was still recommending surgery and indicated that if no operation were performed, there would be continued atrophy in the hand muscles.

At the conclusion of the hearing, the matter was set for oral argument before the entire Commission on February 22, 1983. Prior to the hearing claimant and respondent Consolidated entered into a settlement contract which provided that Consolidated pay an award of $11,844 to claimant, representing an additional disability of 30% in claimant's left arm. The award was to represent a full and final settlement of all issues between Consolidated and claimant; the Fund was explicitly excluded from the terms of the agreement. The following handwritten language was incorporated into the otherwise typewritten terms of the settlement contract:

> "The Petitioner and Respondent* expressly acknowledge that the Respondent 'Second injury Fund' (Illinois State Treasurer) is not a signatory to their agreement herein as to the nature and extent of Petitioner's permanent disability and is at this time actively contesting the same, but this settlement is neither contingent upon nor to be defferred [sic] pending a determination of the issues involved in that contest, and as between Petitioner and Respondent* it is 'intended to be and upon approval by the Commission shall become a full and final settlement of all issues between them in this case'. [Respondent Consolidated Aluminum, only.]"

The settlement contract was presented to Commissioner Miller for

his approval. He neither approved nor disapproved of it, but rather scheduled a hearing on it for February 22, 1983. That hearing was held with all parties represented by counsel, and the matter was taken under advisement. No transcript of that hearing is in the record.

The contract was approved by the full Commission on February 25, 1983. It was then agreed that arguments would be taken before the full Commission to determine what effect the approval would have on the claimant's entitlement to benefits from the Fund.

Those arguments were presented and a decision was rendered by the Commission dated October 31, 1983. In pertinent part it provided:

"The Commission therefore finds that since the settlement contract signed between Petitioner and Consolidated Aluminum was not binding on the Second Injury Fund and Petitioner failed to prove he lost 100% use of left arm under section 8(e) of the Act, Petitioner is not entitled to additional compensation from the Second Injury Fund pursuant to section 8(e) 18 and 8(f) of the Act."

Upon review instituted by claimant, the circuit court of Madison County, by written order entered April 26, 1984, set aside the decision of the Industrial Commission and ordered that claimant was entitled to additional compensation from the Fund. The court found that the settlement agreement, which established that claimant's left arm was 100% disabled, was binding upon the Fund.

The trial court in its written memorandum set aside the Commission's finding that the settlement agreement was not binding upon the Fund. It characterized the Fund's liability as "derivative" and found that the Commission's decision denying benefits from the Fund was "logically and legally inconsistent" with its earlier action in approving the settlement which was tantamount to a finding of 100% loss of the use of the left arm. Given this conclusion, the trial court did not reach the issue of whether the evidence at the hearing of October 26, 1982, supported an award of total disability.

The trial court relied exclusively on two Illinois Supreme Court decisions which hold that, for some purposes at least, a Commission-approved settlement contract has the same legal effect as a final award of the Commission. In *Harrison Sheet Steel Co. v. Industrial Com.* (1950), 404 Ill. 557, 90 N.E.2d 220, the court found that a Commission-approved settlement is legally effective as a final award for the purposes of computing a deduction for a prior injury from an award for a subsequent injury pursuant to the Workmen's Compensation Act (Ill. Rev. Stat. 1951, ch. 48, par. 138.8(e)(17)). In *Ahlers v.*

*Sears, Roebuck Co.* (1978), 73 Ill. 2d 259, 383 N.E.2d 207, the court held that such a settlement constitutes the equivalent of an award within the meaning of section 19(g) of the Act. That section allows a party to present a final decision of the Industrial Commission to an appropriate circuit court for entry of judgment in accordance therewith.

The *Ahlers* court cited other decisions which recognize that Commission approval of a settlement agreement may be, in legal effect, an award. (*Michelson v. Industrial Com.* (1941), 375 Ill. 462, 31 N.E.2d 940; *Dyer v. Industrial Com.* (1936), 364 Ill. 161, 4 N.E.2d 82; *Hartford Accident & Indemnity Co. v. Industrial Com.* (1926), 320 Ill. 544, 151 N.E. 495.) For instance, in *Hartford* the employer and employee entered into a settlement contract providing for weekly payments to the employee; the employer agreed not to suspend payments or seek diminution of the agreed amount. However, when the employee died before the payment period expired, the employer sought to terminate the payments. The court held that the parties could not waive the statutory provision that benefits extinguish upon the death of the employee, even by approved settlement contract.

The obvious distinction between the instant case and those cited above is that none of the above cases involved third parties to the settlement agreement. Thus, the cited cases involved questions of whether and to what extent the contract was binding on the parties thereto, or whether certain terms and conditions of the contract had been fulfilled or terminated.

Assuming, *arguendo,* that the settlement contract was an "award" as between the claimant and Consolidated, and was an "award" within the meaning of section 8(f) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(f)) as found by the trial court, neither the trial court nor the claimant have clarified why that finding precludes the Fund from further contesting the extent of claimant's disability.

The question appears to be one of first impression in this State. However, some of our sister jurisdictions have had occasion to face similar problems under their statutes. In *White v. Weinberger Builders, Inc.* (1976), 397 Mich. 23, 242 N.W.2d 427, the Michigan Supreme Court held that Michigan's Second Injury Fund could not be held liable for "differential benefits" without a prior determination of employer liability. In *White* the employers and employees entered settlement agreements which "redeemed" the employers' alleged prospective liability. The court found that the settlement agreements, which did not concede employer liability for the employees' disabilities, precluded the employees from seeking benefits from the State's

Second Injury Fund. (Accord, *Arduser v. Daniel International Corp.* (1982), 7 Kan. App. 2d 225, 640 P.2d 329; see also *Subsequent Injury Trust Fund v. Alterman Foods, Inc.* (1982), 162 Ga. App. 428, 291 S.E.2d 758 (determination made in a proceeding between claimant and employer not *res judicata* of employer's claim against Second Injury Fund, since the parties were not the same).) The *White* case differs from the instant one in that respondent Consolidated conceded liability for 30% of claimant's total disability.

The clear implication of the trial court's finding is that it applied a *res judicata* effect upon the settlement agreement. *Res judicata* presents questions and answers of Delphian clarity in cases much more lucid than the instant one. In general, the doctrine provides that an adjudication on the merits of a case is conclusive as to the rights of the parties and their privies and operates as a bar to a subsequent action by the same parties involving the same claim, demand, or cause of action. (50 C.J.S. *Judgments* sec. 592 (1947); *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 382 N.E.2d 1217.) In the instant case, it appears that since the Fund was expressly excluded from the terms of the settlement agreement, it was also excluded from the *res judicata* effects of the final award which was premised upon that agreement. The fact that the Fund's liability may be "derivative" does not mean that it is bound by a settlement agreement entered into between the employer and employee over objection of the Fund. (2 Larson, Law of Workmen's Compensation sec. 59.31(f) (1983).) Moreover, *res judicata* is normally invoked in subsequent proceedings involving the same parties and/or claims; here, the workers' compensation proceeding merely continued after two of the parties settled one of the two separate claims involved.

■ We hold that the Second Injury Fund cannot be held liable upon a settlement contract unless it has expressly consented to and joined in such a contract. In the instant case, it participated in all the Commission proceedings, but only for the purpose of objecting to its liability, claiming that the claimant was not totally disabled. Moreover, as has been indicated, it was expressly excluded from the operation of the settlement contract. An entirely different question would have been presented if the contract were silent regarding the Fund. It would be a questionable practice to allow the Fund's liability to be determined by private parties, but we offer no opinion as to what the result might be in the face of silence in a settlement agreement. The Commission was correct and the circuit court of Madison County was in error on this issue.

We turn briefly to the second issue raised by the Fund on appeal,

but not reached by the trial court and not briefed in this court by the claimant; *viz.*, whether the Commission's finding that the claimant was not totally disabled was against the manifest weight of the evidence.

As has been noted, the Fund did not participate in the deposition of Dr. Tulyasthien, and this was the only medical evidence presented at the hearing before Commissioner Miller to establish total disability. The doctor stated that there was full flexion and extension of the left elbow (the locus of claimant's original injury) and full range of motion in the left shoulder. He diagnosed claimant as having ulnar nerve palsy and carpal tunnel syndrome in his left arm and hand, but it was his opinion that the carpal tunnel syndrome was not causally related to the injury to claimant's left elbow. Claimant had apparently refused Dr. Tulyasthien's advice to have an operation to correct the above conditions. The doctor stated that the atrophy in claimant's hand muscles seemed worse since 1976, but it was not clear whether the atrophy resulted from the ulnar nerve condition or the carpal tunnel syndrome.

Claimant testified that his left arm had deteriorated since the prior award of benefits and complained particularly of increased weakness and atrophy of the muscles in the left appendage as well as decreased ability to lift and grip objects. Claimant testified that he had driven himself to the hearing that day.

● 2 The purpose of a proceeding under section 19(h) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(h)) is to determine whether a claimant's disability has changed since the time of the original Industrial Commission decision. (*Motor Wheel Corp. v. Industrial Com.* (1979), 75 Ill. 2d 230, 388 N.E.2d 380.) Like other factual determinations made by the Industrial Commission, the decision that there are not sufficient changes in the extent of claimant's disability to warrant modification of an earlier award will not be reversed unless contrary to the manifest weight of the evidence. (*Howard v. Industrial Com.* (1982), 89 Ill. 2d 428, 433 N.E.2d 657.) Given the testimony of the orthopedic surgeon concerning the range of motion in claimant's left arm and his opinion that the carpal tunnel syndrome was not related to the previous injury, as well as claimant's testimony that he was able to operate an automobile, the Industrial Commission's decision to deny a modification of the prior award was not against the manifest weight of the evidence.

Therefore, the order of the circuit court of Madison County reversing the decision of the Commission regarding the Second Injury Fund is itself reversed; the decision of the Commission that the claim-

ant's disability had not increased to 100% is affirmed.

Circuit court reversed, Industrial Commission affirmed.

McNAMARA, LINDBERG, and KASSERMAN, JJ., concur.

JUSTICE BARRY, concurring in part and dissenting in part:
I agree with the result of the majority on the basic issue presented: Whether the settlement should be binding on the Second Injury Fund. I agree that the Second Injury Fund should not be held liable upon the settlement contract because the Fund is explicitly excluded therefrom. I disagree, however, with the majority result reached on the second, subsidiary issue injected into this case by the Second Injury Fund: "The issue is whether the petitioner proved that he had lost a 100% use of his left arm." There was no need for the petitioner to so prove in the context of this case as presented to the full Commission after settlement and to this court. That "issue" was properly not addressed by the petitioner nor by the trial court. In fact, by the handwritten language incorporated into the settlement contract, it was anticipated that another "contest" regarding that subject would be had between the petitioner and the Second Injury Fund. By my view, that issue was improperly considered by the Commission and improperly included for consideration by this court in the context of the case before us. The only proper question for consideration in this case is the effect of a 100% settlement upon the Fund. The section 19(h) petition was determined by the approval of the settlement. The Second Injury Fund participated in the settlement. The Commission concluded, and we agree that the Fund was properly excluded from the effect of the settlement.

However, were we to assume that the Commission properly considered the issue, I find a serious ambiguity in the final order of the Commission. In this case, a full and final settlement of all issues was presented to the Commission. The *full* Commission at the hearing approved the settlement contract. Thereafter the full Commission heard argument to determine the effect of the settlement upon the Fund. The Commission then made a limited *finding*. The Commission's decision states:

> "The Commission *** *finds* *** petitioner is not entitled to additional compensation from the Second Injury Fund for the reasons set forth below.
>
> FINDINGS OF FACT AND CONCLUSIONS OF LAW ***."

(Emphasis added.)

Thereafter in the decision, among the reasons given, the Commission gratuitously added that though petitioner suffered a substantial loss of use, he failed to prove 100% loss of use of the left arm, and then went onto recite: "It is unnecessary for the Commission to determine whether or not petitioner's permanent disability as a result of that accident was materially increased under Section 19(h) of the Act beyond the 80% [sic] loss of use of the left arm previously found." Obviously the Commission recognized there was no need to determine any more than the liability of the Second Injury Fund, but went on to give consideration to percentage loss, contrary to its approval of the 100% settlement. The settlement has the force and effect of an award of 100% loss of use. (*Harrison Sheet Steel Co. v. Industrial Com.* (1950), 404 Ill. 557, 90 N.E.2d 220.) Had the Second Injury Fund not been exempt here, I would rule that *Harrison* is dispositive. However, since the Fund is not bound by the award, by my view the unnecessary portion of the Commission's decision should be disregarded. I agree with the observation of the trial court:

"It is uncomprehensible to this Court how the Industrial Commission on February 25, 1983 can approve a settlement contract establishing a 100% loss of use and on October 31, 1983 find that the petitioner has failed to prove he lost 100% use of his arm. The decision of October 31, 1983 is logically and legally inconsistent with the earlier actions of the Commission in this matter."

Therefore, a remand for arbitration and Commission decision should be mandated, with only the Fund and the petitioner participating to consider percentage loss of use of the left arm. Logic, law and reasons of policy so dictate. Logically, the Fund should not be bound when exempt; legally, the 100% settlement has the force and effect of an award; and as a matter of policy settlements should be encouraged. To accomplish the result the majority prefers, the Commission here would have had to refuse the settlement until the percentage loss of use was decided by it.

In sum, I conclude it should be noted that this is a 10-year old case; that the employer should be allowed to buy peace while saving the cost of future medical expenses; that this petitioner, a one-armed unemployed man should be allowed to accept a settlement seven years after his remaining arm was injured; that the Second Injury Fund should not be bound; and that all should have been accomplished without the injection of the nonissue by the Fund and its consideration by the Commission and this court.