W.C. CONLEY, Appellant,

v.

**TREASURER OF MISSOURI,** Respondent.

No. 75002.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 3, 1999.

William K. Meehan, Joseph J. Dolgin, P.C., Clayton, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Reid S. Highlander, Asst. Attorney General, St. Louis, for Respondent.

PAUL J. SIMON, Presiding Judge.

W.C. Conley (employee) appeals the award of the Labor and Industrial Rela-

tions Commission of Missouri (Commission). The Commission adopted the findings of fact and conclusions of law of the administrative law judge (ALJ) and affirmed the decision denying compensation from the Second Injury Fund (Fund) because employee failed to satisfy the threshold requirements provided in section 287.220.1 RSMo 1994 (all further references will be to RSMo 1994 unless otherwise indicated).

On appeal, employee contends that the Commission erred in denying him benefits because it: (1) ignored the unimpeached and uncontradicted testimony of a doctor who testified that employee had sustained permanent partial disability (PPD) of 35 percent of the upper left extremity at the level of the elbow, and the conclusion that employee had sustained a fourteen percent PPD was not supported by the evidence; and (2) admitted into evidence the compromise lump sum settlement (settlement) dated April 15, 1997, because it was evidence of a compromise and settlement and, therefore, was irrelevant and prejudicial and against public policy. We affirm.

■■■ Our review is limited to a determination of whether the Commission's award, rather than that of the ALJ, is supported by competent and substantial evidence or if its determination is clearly contrary to the weight of the evidence, viewing the record as a whole. *Holaus v. William J. Zickell Co.*, 958 S.W.2d 72, 74 (Mo.App. E.D.1997). We review all evidence and inferences in the light most favorable to the Commission's award. We defer to the Commission on issues concerning credibility and weight to be given to conflicting evidence and testimony. The Commission is free to disregard testimony of a witness even if no contradictory or impeaching evidence is introduced. It is in the Commission's sole discretion to determine the weight to be given expert opinions, and that cannot be reviewed by this Court. Where issues involve matters of law, we review independently. *Id.*

Furthermore, we will reverse the Commission's findings only upon finding that: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; and (4) there was not sufficient evidence in the record to warrant the making of the award. Section 287.495.1.

The record indicates that on November 15, 1995, employee filed a claim for workers' compensation benefits from his previous employer, Lafayette Industries (Lafayette), a sheltered workshop, for chronic lateral epicondylitis as a result of an elbow injury (primary injury) suffered at Lafayette on March 3, 1994, while he engaged in a repetitive motion as he showed workers how to do their job. His claim against the Fund listed previous injuries which included: an injured left wrist in the 1970's, left knee in 1980, right wrist in 1982, left foot fractured in 1988, and right hand crushed in 1991 resulting in injuries to his fingers, right shoulder and neck.

An injury report dated December 1, 1995 was filed with the Division of Workers' Compensation stating that he suffered an "alleged incident unknown," on March 3, 1994. On December 7, 1995, Lafayette and its insurer, Swim – Group Self Insurer, filed their joint answer denying each and every allegation set forth in employee's claim for compensation. On April 15, 1997, employee entered into a stipulation for compromise settlement (settlement) with Lafayette pursuant to section 287.390.

The settlement stated that employee and Lafayette agreed to enter into a compromise lump sum settlement in the amount of $6000 based upon an approximate disability of fourteen percent of employee's left elbow. The settlement stated that Lafayette paid neither medical expenses nor temporary disability for employee and that there were disputes between the parties as to the primary injury, medical causation, the nature and extent of employee's PPD and responsibility for employee's medical costs for the past, present

and future. Furthermore, the settlement stated that any payment by the Fund was "left open." The settlement was approved by the ALJ.

On November 3, 1997, a hearing was held on employee's claim against the Fund before an ALJ. At the outset, the Fund offered a certified copy of the settlement into evidence. Employee objected on the grounds of relevancy and hearsay; however, the ALJ denied employee's objections and admitted the settlement into evidence because it was certified and relevant. The ALJ took administrative notice of the settlement because it was part of the file and stated that he was not considering the settlement as conclusive evidence of the primary injury.

At the hearing, employee testified that upon sustaining the primary injury at Lafayette, he sought "hot and cold treatments" and took cortisone shots to alleviate the pain. In July 1994, employee had surgery to remove a bone spur from the end of his elbow and received six to eight weeks of therapy following the surgery. Employee testified that due to the condition of his elbow, he could not return to Lafayette. Later, he accepted employment with the City of Olivette as a rabies control officer for a year and a half until taking his current position as a community service officer for the Town and Country Police Department.

Working for the police department, employee handles prisoners, picks up cartons of paper, moves tires and engages in administrative activities. Employee has not missed any time at the police department; however, the condition of his elbow has impaired his ability to complete tasks at work where he occasionally takes "light duty" days consisting of "doing a lot of paperwork." In addition, employee testified that on a "monthly basis" the pain resulting from his elbow injury and the various other injuries listed on his claim for workers' compensation detrimentally affect his ability to work and prevent him from engaging in activities which involve the lifting of objects weighing more than 50 pounds.

Also at the hearing, employee presented the August 14, 1997, deposition of Dr. Shawn Berkin (Dr. Berkin), an osteopathic physician. In his deposition, Dr. Berkin stated that he examined employee on May 1, 1996 and "prepared a report after that examination." Relying on the report to refresh his testimony, Dr. Berkin stated that upon examining employee, employee apprised Dr. Berkin of his past injuries and complained of pain, tenderness, and weakness in his left elbow which was aggravated by lifting. Dr. Berkin testified that as a result of the primary injury, employee had "some restricted motion to the elbow, suggesting that he has limitations with the use of that arm," resulting from the "pain and inflammation that involves his left elbow." Regarding employee's other injuries, Dr. Berkin testified that aside from a limited range of motion in his left hand, employee's various injuries caused him pain and "some tenderness." As a result, Dr. Berkin testified that employee suffered: (1) 35 percent disability of the left upper extremity beginning at his elbow; (2) twenty percent disability of his right wrist; (3) 30 percent PPD of his left knee; (4) twenty percent PPD of his left foot at the level of his ankle; and (5) a ten percent PPD of his left wrist. Dr. Berkin stated that the combination of employee's injuries resulted in a higher "overall degree" of PPD.

On cross-examination, Dr. Berkin stated that in conducting his examination of employee, he relied on employee's veracity in addition to his medical records. Dr. Berkin testified that the examination with employee lasted an hour and that he did not order a diagnostic testing of employee, provide him with any therapy or schedule a second examination. Furthermore, Dr. Berkin testified that employee's elbow failed to demonstrate any joint instability or abnormal reflexes and that there had been no atrophy in the muscles surrounding the elbow.

On December 4, 1997, the ALJ issued his findings of fact and conclusions of law (award). In the award, the parties stipulated that employee was injured on March 3, 1994, and that his claim was settled on April 15, 1997. Further, the ALJ found that employee's duties at the police department consisted of lifting and using manual force, police vehicle maintenance, lab work, filing and "lots of paperwork." The ALJ found that employee had missed no work; however, "he will do light duty if his arm hurts." Moreover, the ALJ took notice of the various treatments employee had received for his elbow, his various pre-existing conditions, and Berkin's testimony. Finally, the ALJ noted that employee had "signed a CLSS agreement with the employer for 14% PPD of the left upper extremity at the level of the left elbow," and that the "Compromise Lump Sum Settlement noted disputed issues." Based on the aforementioned facts, the ALJ issued its Rulings of Law regarding liability of the Fund stating that:

Based upon the claimant's testimony as to how the primary injury has affected him, the lack of any certified medical records offered into evidence, the Compromise Lump Sum Settlement and Dr. Berkin's objective findings, I find that the primary injury did not satisfy the threshold requirements as provided in section 287.220.1 RSMo.1996.

Although Dr. Berkin's opinion indicated the claimant had a 35% permanent partial disability of the left elbow, he found no joint instability, normal biceps, triceps and brachial radialis reflexes bilaterally and there was no atrophy of muscles. Further, the claimant went back to work as a canine control officer in Olivette, a job which required vigorous use of his arms. Although he subsequently went to work at Town & Country Police Department, his duties there were also physical. He stated that the police department would accommodate him if he had problems from his preexisting injuries. This includes all of his preexisting injuries; however, these injuries can not[sic] be included as part of the liability until the primary injury reaches the thresholds. Since the primary injury did not meet the thresholds, the preexisting conditions can not [sic] combine to create Second Injury Fund liability.

\* \* \*

There were no medical records before the ALJ at the time he issued the award.

Employee appealed the denial of Fund liability to the Commission. On August 13, 1998, the Commission issued its final award affirming the ALJ's award of workers' compensation benefits from Lafayette and denying benefits from the Fund. In its opinion, the Commission stated that the issues were: (1) whether the Fund was liable for the payment of compensation to employee and, if so, the nature and extent of its liability; and (2) what weight, if any, should have been given to the settlement.

Citing *Blue Ridge Bank v. State Banking Board*, 509 S.W.2d 763, 766–67 (Mo. App. W.D.1974) and *Missouri State Highway Patrol v. Robertson*, 648 S.W.2d 644, 645 (Mo.App.1983), the Commission stated that the contents of an agency's file may be subject to official notice and that an agency may officially notice its own records; thus, the ALJ's actions in taking official notice of the settlement were proper. Furthermore, citing *Bailey v. Industrial Commission*, 137 Ill.App.3d 366, 91 Ill.Dec. 817, 484 N.E.2d 376 (5 Dist.1985), the Commission stated that the settlement indicated that the Fund claim was "left open," and that no attorney for the Fund was a party to the settlement; thus, the settlement had no *res judicata* effect on the Fund and its terms were not binding on the subsequent parties. The Commission held that because the ALJ considered all of the evidence taken together in finding no Fund liability, his actions were proper and consistent with the aforementioned case law.

The threshold issue is whether it was proper for the ALJ to consider the settlement in determining employee's PPD. Therefore, we shall initially address employee's second point in which he contends that the Commission erred in admitting the settlement into evidence because it was irrelevant, prejudicial and against public policy.

Initially, we note that approval of a settlement by the commission or an ALJ is a prerequisite to its validity. Section 287.390.1. Further, a settlement is made by the parties and is wholly voluntary. *Shockley v. Laclede Elec. Co-op.*, 825 S.W.2d 44, 47 (Mo.App. S.D.1992). The ALJ has no power to coerce a settlement of a workers' compensation claim, but only has veto power to refuse to approve the settlement already made if he deems it not in accordance with the rights of the parties. A settlement approved by the ALJ is conclusive and irrevocable and, when approved, a settlement of a workers' compensation claim is the basis of *res judicata* and estoppel by judgment. Any relief from a settlement approved by the ALJ under section 287.390 can be had only in a court of equity on proof of fraud or mistake. *Id.*

Here, there is no dispute that employee and employer voluntarily entered into a settlement based on an approximate PPD of fourteen percent of employee's left upper extremity and the settlement was approved by the ALJ.

To recover compensation from the Fund, employee has the burden to prove, inter alia, that he had a pre-existing PPD of such seriousness as to constitute a hindrance or obstacle to his employment or reemployment if the employee becomes unemployed, and the pre-existing permanent partial disability, if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent PPD. Section 287.220.1. Moreover, section 287.220.1 provides in pertinent part:

After the compensation liability of the employer for the last injury, considered alone, has been determined by an administrative law judge or the commission, the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall than be determined by that administrative law judge or by the commission and the degree or percentage of disability which existed prior to the last injury plus the disability resulting from the last injury, if any, considered alone, shall be deducted from the combined disability, and compensation for the balance, if any, shall be paid out of a special fund known as the second injury fund ...

\* \* \*

If the previous disability or disabilities, whether from compensable injury or otherwise, and the last injury together result in total and permanent disability, the minimum standards under this subsection for a body as a whole injury or a major extremity injury shall not apply and the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered alone and of itself; except that if the compensation for which the employer at the time of the last injury is liable is less than the compensation provided in this chapter for permanent total disability, then in addition to the compensation for which the employer is liable and after the completion of payment of the compensation by employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under section 287.200 out of a special fund known as the "Second Injury Fund ..."

Therefore, section 287.220.1 requires the ALJ to determine the compensation liability of the employer for employee's last injury, considered alone, and the degree or percentage of employee's

disability that is attributable to all injuries or conditions existing at the time the last injury was sustained. Moreover, section 287.220 provides for a separate liability of the employer and the Fund. *Grant v. Neal,* 381 S.W.2d 838, 842 (Mo.1964). Pursuant to section 287.220, the employer is liable only for the percentage of disability for employee's last injury without any pre-existing disability, and the Fund is liable for the balance of the disability found to exist above that found for employee's last injury alone. *Id.*

Here, the record reveals that the medical records and Dr. Berkin's deposition were presented at the Fund hearing. While the authority of an ALJ to order a medical exam is conferred by statute, section 287.210.2, the Fund is not included as one that may request employee to submit to a physical examination. However, the Fund has the discovery rights granted by section 287.560, which allows the "division, any administrative law judge thereof or the commission" to "issue process, subpoena witnesses, administer oaths, examine books and papers, and require the production thereof, and to cause the deposition of any witness to be taken." Thus, the settlement was relevant in that it established the percentage of disability from employee's last injury, a prerequisite to determining Fund liability, if any. Section 287.220.1.

We are aware that generally, evidence of a settlement agreement is not admissible absent a clear and cogent reason. *Newman v. Ford Motor Co.,* 975 S.W.2d 147, 149 (Mo.banc 1998). The Commission, which is limited to ascertaining the facts from the record presented by the parties and applying the workers' compensation law to the facts is very similar to a trial court and may employ official notice of its file when it is proper under the rules of evidence to do so. *Stegeman v. St. Francis Xavier Parish,* 611 S.W.2d 204, 208–09 (Mo.banc 1981); *See also In re Estate of Frein,* 967 S.W.2d 258, 262 (Mo. App. E.D.1998). Accordingly, the Commission may take official notice of its own file.

Employee argues that the settlement should not have been admitted into evidence nor relied upon as a "proof of fact in dispute," and effectively wishes to relitigate his percentage of PPD as agreed in the lump sum settlement because that percentage may prevent him from receiving compensation from the Fund.

Here, the settlement was relevant as proof of employee's percentage of disability from his last injury, a requirement of Fund liability. Further, to find that the settlement was inadmissible would permit employee to relitigate his percentage of PPD resulting from his last injury and collaterally attack the award and defeat its finality. Section 287.390. Finally, workers' compensation is purely a creature of statutory creation, and we shall not violate and defeat the clear purpose of the statute establishing the Fund and in particular, section 287.390. For these clear and cogent reasons, the settlement was admissible. *See Newman,* 975 S.W.2d at 149. Point denied.

In his first point on appeal, employee contends that the Commission erred in denying him benefits from the Fund because it ignored the unimpeached and uncontradicted testimony of Berkin regarding employee's last injury. However, as discussed in our disposition of employee's second point on appeal, to relitigate employee's disability from his last injury as determined by the ALJ would violate section 287.390 and we decline to do so.

Accordingly, viewing the record as a whole, we find that the Commission's award is supported by competent and substantial evidence. *Holaus,* 958 S.W.2d at 74. Point denied.

Judgment affirmed.

KATHIANNE KNAUP CRANE, J. and LAWRENCE E. MOONEY, J., concur.