2016 IL App (1st) 143044WC
Opinion filed:  April 8, 2016

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| STANFORD DORSEY, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | Appeal No. 1-14-3044WC |
| | ) | Circuit No.  14-L-50114 |
| THE ILLINOIS WORKERS' | ) | |
| COMPENSATION COMMISSION *et al.* | ) | |
| (City of Chicago, | ) | Honorable |
| | ) | Robert Lopez Cepero, |
| Defendant-Appellee). | ) | Judge, Presiding. |

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Hoffman, Hudson, Harris, and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1     The claimant, Stanford Dorsey, filed an application for adjustment of claim under the

Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2008)), seeking benefits for

injuries to his left arm allegedly sustained while employed as a street light maintenance

electrician  for the City of Chicago (employer).  Following a hearing, the arbitrator found that the

claimant's injuries resulted in a 17% loss of the person-as-a-whole under section 8(d)(2) of the

Act.  820 ILCS 305/8(d)(2) (West 2008).  The employer sought review of the arbitrator's award

before the Illinois Workers' Compensation Commission (Commission), which modified the

award, finding that the claimant's injury to his left arm was compensable as a scheduled injury under section 8(e) of the Act. 820 ILCS 305/8(e) (West 2008). The Commission awarded the claimant a sum equal to the loss of 37.5% of the use of the left arm. The Commission further held that the employer was entitled to a credit for a payment made in 1998, pursuant to a settlement, to compensate for a 30% loss of use of that same arm. The claimant sought judicial review of the Commission's decision before the circuit court of Cook County, which confirmed the Commission's decision. The claimant then filed this timely appeal.

¶ 2    The claimant raises the following issues on appeal: (1) whether the Commission's award of compensation for the loss of the use of the arm under section 8(e) of the Act rather the loss of the use of the person-as-a-whole under section 8(d)(2) was against the manifest weight of the evidence; and (2) whether the Commission erred in granting a credit to the employer for payments made pursuant to a prior settlement agreement.

¶ 3                                    FACTS

¶ 4    The following factual recitation is taken from the evidence presented at the arbitration hearing conducted on April 23, 2013.

¶ 5    The claimant testified that he had been employed as an electrician by the employer for approximately 24 years. On February 8, 2010, he was working with his crew on street lights that were not functioning. It was determined that they would need to lift a manhole cover to access the electrical circuits. The claimant estimated that the manhole cover weighed approximately 350 to 400 pounds. The claimant and a coworker attempted to lift the manhole cover together, but they lost their balance while doing so. In his struggle not to fall while holding up his end of the manhole cover, the claimant felt an immediate pain in his left arm. The pain caused him to drop the manhole cover.

¶ 6    The claimant sought immediate medical attention at Mercy Works Hospital.  The claimant reported that he could not flex his left elbow and had tenderness in left forearm.  An MRI revealed a complete disruption (rupture) of the distal biceps tendon, which is located just beneath the elbow.  The treatment records noted "left elbow strain."  There was no documented complaint of shoulder pain.  The attending physician referred the claimant to Dr. William Hellar at the Woodland Orthopedic Center.

¶ 7    On February 12, 2010, the claimant was examined by Dr. Heller, a board certified orthopedic surgeon.  Dr. Heller diagnosed ruptured distal bicep tendon and informed the claimant of the need for surgery to repair the rupture.

¶ 8    On February 15, 2010, Dr. Heller performed surgery to repair the tendon rupture and corresponding radial nerve neurolysis.  The tendon repair required a debridement of the bicep tendon preparatory to reattachment of the tendon to the bone.  The procedure further required surgical drilling into the bone near the elbow joint to anchor the tendon back to the bone with a 7 millimeter screw and anchor system.  Following surgery, the claimant underwent a course of physical therapy and work hardening at Mercy Works and at Chatham Hand Rehabilitation Services in Chicago.  The claimant's postoperative treatment and physical therapy records reflect the primary pain location as the left elbow, with no mention shoulder pain.

¶ 9    On September 17, 2010, the claimant was released to full duty with no work restrictions. He returned to his former job with the employer with the same duties and responsibilities and the same rate of pay.  The claimant testified that at the time he returned to work his left arm was not as strong as his right, nor was it as strong as prior to the accident.  He testified that after he returned to work, he was able to perform all tasks assigned to him; however, he was still experiencing pain in his left arm.  He routinely took Ibuprofen for the pain.  He further testified

that he worked for about one year until he requested, and was granted, a transfer to less strenuous work. After transferring, the claimant took Ibuprofen less frequently.

¶ 10    The claimant further testified that, at the time of the hearing, he still experienced left arm pain. Although he never missed work because of the injury or pain, he still experienced pain and discomfort that affected his activities. He testified that he has continuing problems lifting any heavy objects. Prior to the accident, he lifted weights recreationally, but he has not been able to do so since the accident. He also testified that he cannot help family or friends move or lift furniture as he had on several occasions prior to the accident. The claimant also testified that he is right hand dominant, so he does not have any trouble with routine daily activities, such as dressing himself, writing, eating or cooking. He also testified that he has no appointments for additional medical treatment, nor does he expect to have further medical treatment. Other than an occasional Ibuprofen, he does not take any medication to treat his left arm pain.

¶ 11    The claimant acknowledged that he had a previous injury to his left shoulder in November 1995, which resulted in a settled claim with the employer for 30% loss of use of the left arm pursuant to section 8(e) of the Act. 820 ILCS 305/8(e) (West 1994). The settled amount was $28,590.80. The claimant testified that the injury in 1995 was to his left rotator cuff, and did not involve the biceps tendon. He also testified that, after treatment, he had returned to his regular job in August 1996, and did not require any time off after he completed treatment for that injury.

¶ 12    Following the hearing, at which the only contested issue was the nature and extent of the claimant's permanent injury, the arbitrator awarded the claimant $664.72 per week for 85 weeks ($56,501.20) representing a 17% loss of the person-as-a-whole under section 8(d)(2) of the Act. 820 ILCS 305/8(d)(2) (West 2008). In doing so, the arbitrator relied upon *Will County Forest Preserve District v. Illinois Workers' Compensation Comm'n*, 2012 IL App (3d) 110077WC for

the proposition that "shoulder, biceps, and elbow injury classifications" were no longer to be considered injuries to the "arm" compensable under section 8(e) of the Act. 820 ILCS 305/8(e) (West 2008). The arbitrator then rejected the employer's argument that it was entitled to a credit for the prior settlement, finding that credits are not available to offset awards issued pursuant to section 8(d)(2) of the Act. 820 ILCS 305/8(d)(2) (West 2008).

¶ 13 The employer sought review of the arbitrator's award from the Commission. The Commission modified the award, agreeing with the employer's argument that the claimant's injury to his bicep tendon at the distal insertion (*i.e.*, above the elbow) was an injury to the "arm" compensable under section 8(e)(10) of the Act. 820 ILCS 305/8(e)(10) (West 2008). The Commission found that the arbitrator had misconstrued the holding in *Will County*, since nowhere in that decision had the court held that the "elbow" was not part of the "arm" for purposes of compensation. The Commission noted that, unlike shoulder injuries, "bicep injuries which occurred at the elbow [fall] within the scheduled injuries listed in [section] 8(e) of the Act." The Commission further determined that the employer was entitled to a credit for the payment made in settlement of the 1998 injury to the left arm. The Commission noted that, although the previous injury was to the left shoulder, the settlement was paid under section 8(e) of the Act, which at the time included shoulder injuries in the same injury classification as arm injuries. Thus, the employer was entitled to credit for a previous section 8(e) payment for the same arm.

¶ 14 The Commission awarded the claimant $664.72 per week for 15.375 weeks ($10,220.07) representing 37.5% loss of the use of the left arm minus a credit for the 30% loss of use of the same arm as a result of the prior settlement.

¶ 15 The claimant sought review in the circuit court of Cook County, which confirmed the decision of the Commission. The claimant then filed this timely appeal.

¶ 16                                    ANALYSIS

¶ 17                              1.  Permanency

¶ 18     The nature and extent of a claimant's permanent injury is a question of fact for the

Commission to determine, and its decision will not be overturned on appeal unless it is against

the manifest weight of the evidence.  *Freeman United Coal Mining Co. v. Industrial Comm'n*,

318 Ill. App. 3d 170, 175 (2000).  At issue in the instant matter is whether the Commission's

award of benefits under section 8(e) of the Act (820 ILCS 305/8(e) (West 2008)) rather than

section 8(d)(2) of the Act (820 ILCS 305/8(d)(2) (West 2008)) was against the manifest weight

of the evidence.

¶ 19     Section 8(e) of the Act provides a schedule of compensation of injuries to any of 15

different specified body parts, including the "arm."  820 ILCS 305/8(e)(10) (West 2008).  For

purposes of compensation under section 8(e)(10) of the Act, the "arm" has been defined as "the

segment of the upper limb between the shoulder and the elbow" or "between the shoulder and the

wrist." (Emphasis and internal quotation marks omitted.) *Will County Forest Preserve*, 2012 IL

App (3d) 110077WC, ¶ 19.  Here, the medical evidence established that the claimant's injury

was to the bicep tendon at the distal point, *i.e.*, the point where the bicep attached to the bone

near the elbow.  The claimant acknowledges that he suffered injury to the bicep tendon near the

elbow.  He maintains, however, that the record established that his left bicep tendon was also

damaged near the insertion point of the left shoulder and that the surgical procedure also repaired

damage to the tendon at the shoulder.  Thus, he maintains, the injury was primarily to his left

shoulder and should have been compensated as a shoulder injury.

¶ 20     The record does not support his contention.  The medical records describing the

claimant's treatment and surgical procedures contain multiple references to the treatment in the

elbow area without any reference to treatment or surgery to the shoulder.  The surgical records

contain a single reference to the "proximal" area of the arm, which can refer to the shoulder specifically, or can merely refer to the "nearest" to the point of attachment of a specific body part. Taber's Cyclopedic Medical Dictionary (19th ed. 2001). Here, all the medical evidence established that the claimant's surgery was limited to the area near the elbow.[1] Simply put, the claimant maintains that he injured his shoulder, but the overwhelming evidence supports the Commission's finding that he injured his arm and its finding on that issue was not against the manifest weight of the evidence.

¶ 21                                    2. Credit

¶ 22     The claimant next maintains that the Commission erred in awarding the employer a credit pursuant to section 8(e)(17) of the Act. 820 ILCS 305/8(e)(17) (West 2008). Section 8(e)(17) of the Act provides that, for the "permanent loss of use, or the permanent partial loss of use of" a *** "hand, arm, thumb or fingers, leg, foot or any toes" for which compensation has been paid, *** that loss shall be taken into consideration and "deducted from any award made for the subsequent injury." *Id*. The credit under this section of the Act is mandatory. *General Motors Corp, Fisher Body Division v. Industrial Comm'n*, 62 Ill. 2d 106, 112-13 (1975). The credit is due whether the prior compensation was paid pursuant to an award by the Commission, or pursuant to a settlement contract. *Id*.

¶ 23     Here, the claimant received compensation in 1998, pursuant to a settlement contract, for 30% loss of the use of his left arm as the result of the 1995 accident. Since the compensation was for the partial loss of the use of the left arm, the Commission credited this amount against the subsequent award for the partial loss of use of the same member. The claimant maintains, in light of the holding in *Will County Forest Preserve*, the 1998 settlement contract, which was paid

_____

[1]   The arbitrator examined the surgical scar and noted for the record that scar was located at the "crease of the elbow" and extended "around toward the back of the elbow."

under section 8(e) of the Act, should now be viewed as having been paid under section 8(d)(2) of the Act. He points out that the record clearly established that the 1995 injury was to the rotator cuff area of the shoulder and submits that, if the same injury were to be compensated today, it would be a shoulder injury compensable under section 8(d)(2) of the Act, not an arm injury compensable under section 8(e) of the Act.

¶ 24    The claimant cites no authority to support the proposition that the terms of a settlement contract, once approved by the Commission, can be altered or changed. It is well settled that a settlement contract approved by the Commission is a final award of the Commission for all legal effects, including credits due in later awards and the ability to collaterally attack the agreement. See *Harrison Sheet Steel Co. v. Industrial Comm'n*, 404 Ill. 557, 565 (1950); *Michelson v. Industrial Comm'n*, 375 Ill. 462, 468 (1941). Moreover, the public policy of Illinois favors settlements in civil cases, and settlements, once made, are considered to be final. *Cameron v. Bogusz*, 305 Ill. App. 3d 267, 274 (1999).

¶ 25    Here, the claimant settled a claim for injury to his left arm in 1995. The Act provides that any future employer shall be given credit for prior compensation for an injury to that same body part. *General Motors Corp*., 62 Ill. 2d at 112-13. The fact that the claimant might be compensated differently today for an injury that occurred in 1995 does not change the fact that he was compensated under section 8(e) of the Act in 1998. The record established that the claimant was compensated for a prior injury to his left arm and the Commission properly concluded that the employer was entitled to credit for that prior compensation.

¶ 26                              CONCLUSION

¶ 27    The judgment of the circuit court confirming the decision of Commission is affirmed.

¶ 28    Affirmed.