Thomas CAHALL, Employee/Respondent,

v.

RIDDLE TRUCKING, INC., Employer/Appellant,

and

Continental Casualty Company, Insurer/Appellant.

No. 71735.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 16, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 30, 1997.

Application to Transfer Denied Dec. 23, 1997.

Betsy J. Levitt, Mary Anne Lindsey, Evans & Dixon, L.L.C., St. Louis, for E mployer/Appellant.

Rudolph L. Veit, Carson & Coil, P.C., Jefferson City, for Employee/Respondent.

SIMON, Judge.

Employer, Riddle Trucking, Inc. (Riddle), and insurer, Continental Casualty Company (Continental), appeal from an award by the Labor and Industrial Relations Commission (commission) finding the employer/insurer liable for medical bills in the amount of $43,745.25 and further finding that employer remained liable for all future medical care related to the knee injury suffered by employee, Thomas Cahall, on January 28, 1988.

On appeal, employer/insurer contend that the commission erred in holding: (1) them liable for medical expenses incurred by employee after the 1994 accidents, in that once employee prosecuted his 1994 claims to judgment, he was barred from pursuing an inconsistent remedy under the 1988 claim, and that the 1988 and 1994 awards provided the employee with duplicative recovery for his medical expenses; (2) that employee established a sufficient factual basis for an award of compensation for medical expenses, in that the commission allowed medical bills into evidence without accompanying medical records from the health care providers; and (3) that

employee's current medical condition and his need for medical treatment were caused by the 1988 accident, because the overwhelming weight of the evidence indicates that employee's medical condition resulted from the 1994 accidents.

Our review is limited to a determination of whether the commission's award is supported by competent and substantial evidence when the record is viewed as a whole. *Smith v. Climate Engineering*, 939 S.W.2d 429, 430[1–6] (Mo.App. E.D.1996). We review all evidence and inferences in the light most favorable to the commission's award and defer to the commission on issues concerning credibility and the weight to be given to conflicting evidence and testimony in workers compensation cases. *Id.* The commission is free to disregard the testimony of witnesses, even if no contradictory or impeaching evidence is introduced. *Id.* It is in the commission's sole discretion to determine the weight to be given expert opinions, and that cannot be reviewed by this court. *Id.* We review independently issues involving matters of law. *Id.*

The record indicates that employee injured his right knee in 1988, when he was involved in a motor vehicle accident while driving a tractor-trailer truck for employer. Employee sustained an open proximal tibia fracture to his right knee, requiring hospitalization and three surgeries.

On February 6, 1990, employee filed a claim for compensation with the Division of Workers' Compensation to recover medical benefits and permanent partial disability for the 1988 injury. The claim was heard before the Administrative Law Judge (ALJ), who entered an award on September 3, 1993, finding that employee's right knee was fifty percent permanently partially disabled.

In February of 1994, employee returned to work as a self-employed truck driver and obtained workers' compensation insurance through Lumberman's Mutual Casualty Company. On July 27, 1994, employee slipped off a step while climbing down from his truck at a truck stop in Ripon, California, and scraped his right leg along the metal step. The next morning, employee noticed

clear fluid seeping out of his right leg. Employee went to see Dr. VanRyn, an orthopedic surgeon, for treatment, who later performed a skin graft on employee's right leg in the same area as the 1988 injury at DePaul Hospital.

In September of 1994, employee returned to work. On October 11, 1994, while driving his truck through New Mexico, employee bruised his right leg in a traffic accident. The next day his leg began swelling. Employee went to see Dr. VanRyn who referred him to see Dr. Cabbabe, a plastic surgeon, who opined that there was a possibility that employee's body was rejecting the metal plate installed as a result of the 1988 injury, and removed it. After each of these work-related injuries, employee was hospitalized at DePaul Hospital.

On October 28, 1994, employee filed a "Motion to Reopen Case for the Purposes of Establishing Needs of Additional Medical Care as per Order and Temporary Total Disability for Rehabilitation Purposes" in the 1988 claim with the Division of Workers' Compensation. In his motion to reopen his 1988 claim, employee alleged, inter alia, that he had been rehospitalized for treatment and surgery to his right knee related to the 1988 accident and that, due to his additional surgery and hospitalization, employee has been and would be required to remain off his leg for therapeutic purposes for an indefinite period of time. Employer/insurer filed an answer to employee's motion to reopen the case and on November 15, 1994, the ALJ denied employee's motion to reopen the case. After employee's motion was denied, employee filed two separate workers' compensation claims for the 1994 accidents on May 24, 1995.

Subsequently, employee filed a motion to reopen the 1988 claim with the commission. Employer filed its response to employee's motion on October 6, 1995, and the commission found that the portion of the award in the 1988 case regarding weekly permanent partial disability benefits terminated on April 28, 1990, and that it did not have jurisdiction to reopen a compensation award after the payment period ended, but found that it did have jurisdiction to reopen the portion re-

garding treatment for the prior injury. It remanded the case to the Division of Workers' Compensation for an evidentiary hearing regarding the employee's need for medical care related to his 1988 right knee injury.

On July 24, 1996, the hearing took place before the ALJ. Employee's sister, Linda Hunn, testified that she had seen him on an almost daily basis since his 1993 hearing. She helped him manage his affairs and reported that, despite occasional swelling caused by work or driving, he was doing very well until the July 1994 accident. Hunn noted that employee received treatment to the same area of the leg that he had previously injured in the 1988 accident.

Employee testified that doctors performed several surgeries on his leg as a result of the 1988 injury and that from February, 1994, through July, 1994, he did attempt to return to work as a truck driver, driving a truck route to California and back as a self-employed contractor with Schnucks. The trips to California consisted of two days travel each way. Driving the truck caused employee's leg to swell, requiring him to take at least a day or two off to rest after driving half of the journey and at least that many days off after returning home from a trip. Employee testified that the swelling began at the location of the 1988 injury.

On July 27, 1994, employee slipped off of a step while attempting to step down from his truck at a truck stop in Ripon, California. As a result of this accident, employee's right leg was bruised and scraped at or near the same site of the 1988 injury. Employee later noted clear fluid seeping out of the site of the scrape and he bandaged it. By the time employee arrived in Missouri, his leg was swollen and discolored so he went to Dr. VanRyn, who had treated employee for his 1988 leg injury, and he performed a skin graft on employee's right leg in the area of the 1988 injury.

Employee testified that he returned to work in September of 1994 and on October 11, 1994, while in New Mexico, en route home from California, he was involved in a traffic accident that bruised his right leg. Employee further testified that his right leg

became so swollen that he was barely able to drive back to St. Louis. When he arrived in St. Louis, he saw Dr. VanRyn who hospitalized him at DePaul Hospital. He received additional treatment from Dr. Cabbabe.

In February of 1995, employee returned to driving a truck-route to California for Schnucks. Five months later, while driving his truck in California, he noticed his right leg was bleeding extensively from the area of the 1988 injury. After having his leg bandaged, he returned home and saw Dr. VanRyn, who told him that if he did not quit driving he would lose his leg. Employee also testified that he received treatment from Dr. Reynolds, who devised a system of bandaging which increased employee's circulation in his right leg. Employee stated his condition improved with the help of the new bandaging technique, antibiotic medicine and the use of a veinous pump. Employee concluded that he believed all of his medical bills were reasonable and necessary, and that continued treatment was also necessary.

During the hearing, employee offered into evidence: receipts for medicines purchased for the treatment of employee's leg; bills from Premier Care Orthopedics for services rendered by Dr. VanRyn; bills from DePaul Hospital; bills from Surgical Arts of St. Louis for the services rendered by Dr. Reynolds; bills from Medical West Consultants for services rendered by Dr. Cabbabe; bills from Medical West Health Center for a Jobst stocking and glove; a bill from CJM for the vascular pump; an invoice from Hermann Area District Hospital for intravenous antibiotic therapy; a bill from American Home Patient Care for intravenous antibiotic therapy; and a bill from Columbia Regional Home Health Care for skilled nursing charges. Employer objected to these exhibits on the basis that there was a lack of foundation in that the employee is not a medical witness. Employer's objections were overruled.

Dr. William S. Costen, an orthopedic surgeon, testified by deposition on behalf of employer/insurer. Dr. Costen testified that he examined employee's right knee on April 29, 1996, and determined that employee's right knee was "aged severely" as a result of the 1988 injury. Dr. Costen went on to testify that the July 27, 1994 and October 11, 1994 accidents aggravated the condition of claimant's right knee after the 1988 injury. In contrast, Dr. Costen later stated that Dr. VanRyn's treatment of employee's right knee since 1994 was for the 1994 injuries.

On cross-examination, Dr. Costen stated that the 1994 treatment was for the 1994 bruises. Dr. Costen went on to distinguish prior bumps and bruises from those caused by the July and October 1994 injuries. He further testified that employee's need for treatment dated back to 1988, but the 1994 accidents and injuries were "events which triggered the need for treatment."

Dr. VanRyn testified by depositions taken on two different occasions. VanRyn treated employee for his 1988 injury, which consisted of an open tibia fracture extending into the knee joint of his right leg. Employee's treatment by Dr. VanRyn for the 1988 injury lasted until 1993. In August 1994, Dr. VanRyn began treating employee for the injury he suffered in July 1994. He also treated employee for the October 1994 injury. Employee was still under Dr. VanRyn's care at the time of the hearing.

Dr. VanRyn testified that employee returned to him seeking treatment "because of recurring problems and new problems with the right leg." Dr. VanRyn described his treatment of employee's knee after the July 27, 1994 injury, and the October 1994 injury, distinguishing them from his treatment of the 1988 injury. Doctor VanRyn then described the treatment provided by Dr. Cabbabe for the October 1994 injury. Further, Dr. VanRyn stated that, as of the date of his deposition, he was recommending an additional six months of no work with the right leg being elevated for extended periods of time. Dr. VanRyn reasoned that employee's vein problems were triggered by his 1994 accidents and concluded by stating that his treatment of employee was both necessary and reasonable under the circumstances.

On cross-examination, Dr. VanRyn stated that in the absence of the 1988 injury, the 1994 accidents would not have caused problems. Dr. VanRyn testified that employee had enough veins to continue working after

the 1988 injury; however, the additional injury caused employee to lose more of his veinous structure, and he does not have enough open veins to continue to allow that leg to stay in a dependant position to drive.

In his second deposition in this matter, Dr. VanRyn testified to claimant's need for medical care and hospitalization as a result of the July and October 1994 injuries. Dr. VanRyn described both the 1998 injury and the two 1994 injuries as substantial contributing factors to employee's problems now. Dr. VanRyn testified that employee's "venous insufficiency" was present after the 1988 injury, but asymptomatic prior to the 1994 injuries. Dr. VanRyn also testified to employee's continuing need for medical treatment, his current inability to work and to the significant possibility of employee's future return to work. In closing, Dr. VanRyn testified that all the treatment rendered to the employee was reasonable and necessary under the circumstances.

The commission found the 1988 injury to be the cause of the employee's need for medical treatment and held that employee established a sufficient factual basis for an award of compensation for his medical bills and travel expenses. Further, the commission ruled that employer/insurer remained liable for future medical care as it related to the knee injury suffered by employee in the January 28, 1988 accident.

■ In their first point on appeal, employer/insurer contend that the commission erred in holding them liable for medical expenses incurred by claimant after the 1994 accidents, in that once claimant prosecuted his 1994 claims to judgment, he was barred from pursing an inconsistent remedy under the 1988 claim, and that the 1988 and 1994 awards provided employee with duplicative recovery for his medical expenses.

■ The final award of the commission shall be conclusive and binding unless either party to the dispute appeals the award. Section 287.495.1 RSMo 1994 (all references will be to RSMo 1994 unless otherwise noted). Pursuant to Section 287.495.1, we review only questions of law and may modify, reverse, remand for rehearing, or set aside the award based on any of the following grounds and no other:

> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

*   *   *   *   *   *

Although the act should be liberally construed in favor of the employee, to secure its benefits to the greatest number, procedures outlined for appeal by this section are mandatory. *Wilson v. ANR Freight Systems, Inc.*, 892 S.W.2d 658, 662 (Mo.App. W.D. 1994). It is firmly established that the scope of appellate review is limited to these four grounds specified in the statute. *Katzenberger v. Gill* 690 S.W.2d 473, 475 (Mo.App. E.D.1985).

■ Employer/insurer contends that the filing of the two 1994 claims and the ALJ's findings in those cases would bar this claim for either election of remedies or double recovery. Employer/insurer did not make this argument before the commission, but did so in its motion for reconsideration of the commission's award. Employer/insurer's motion was not ruled on because the commission concluded "[i]nasmuch as there has been appeal taken to the Missouri Court of Appeals, and 30 days have passed from the date of the Commission's decision, the Commission no longer has jurisdiction to rule on the Motion." On appeal, employer/insurer has offered the documents in the supplemental legal file. However, Section 287.495.1 provides in pertinent part "Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding ..." The only record we review is the record certified by the commission as containing all documents and papers on file in the matter. *Rice v. State Farm Ins. Co.*, 885 S.W.2d 775, 778[5] (Mo.App. E.D.1994).

Here, employer/insurer has made no allegations of fraud, but relies on the general

rule that an appellate court has the inherent power to look beyond the record where the orderly administration of justice so requires and may take note of facts occurring after the rendering of judgment in the trial court which may affect the proceedings in the appellate court and govern the course of its future actions. *Baker v. Aetna Casualty & Surety Company*, 193 S.W.2d 363 (Mo.App. 1946). Further, employer/insurer argues that this court may take judicial notice of the documents contained in the supplemental legal file since these documents are in the record on appeal for the 1994 claims.

Employer/insurer's reliance on *Baker v. Aetna Casualty & Surety Company* is misplaced because it is not a workers' compensation case. Since the procedures outlined in the workers' compensation statute are mandatory and employer/insurer alleges no fraud, we will not review those matters not considered by the commission.

Employer/insurer also argue that we should take judicial notice of the documents in the Supplemental Legal File, since these documents are before this court in appeals filed by the employer/insurer in the two 1994 claims. Employer/insurer cites *Grassmuck v. Autorama Auto Equipment & Supply Co.*, 659 S.W.2d 264, 266 (Mo.App.1983), in support of their position.

In *Grassmuck,* an appellant tried to introduce a letter not in the record to notify the appellate court that the controversy between the parties had become moot while the appeal was pending. Generally, the letter would not have been admitted into evidence; however, we concluded that we had a duty *sua sponte* to inquire into and determine matters affecting our own jurisdiction. *Id.* We would have been without jurisdiction had the action not been a final order. *Id.* Under those limited circumstances, we took judicial notice of a recent appellate decision where the same matter at issue was undisputed. *Id.* Finding no jurisdiction to hear the appeal, we dismissed the case and remanded it back to the commission for a final determination. *Id.*

This case is distinguishable in that there is no jurisdictional dispute requiring us to take judicial notice of the information contained in the supplemental legal file. Also, the commission was aware of both 1994 cases and chose not to consolidate them. Finally, the orderly administration of justice does not require us to recognize the information in the supplemental legal file because the case is pending on appeal and any inequities can be addressed when that appeal is heard. Point denied.

In their second point, employer/insurer argue the commission erred in finding employee established a sufficient factual basis for an award of compensation for medical expenses, in that employee failed to provide the medical records for: Dr. Reynolds; Dr. Cabbabe; Hermann Area District Hospital; American Home Patient Care; Columbia Home Health; the Jobst stocking and glove; and the vascular pump. Second, employer/insurer argues employee failed to show the reasonableness and necessity of the bills for: the prescriptions employee received from various doctors; the Jobst stocking and glove; the vascular pump; the services of Drs. VanRyn, Reynolds, and Cabbabe; and the treatment provided by DePaul Hospital, Hermann Area District Hospital, American Home Patient Care, and Columbia Home Health. Finally, employer/insurer argues the commission erred in awarding the bills for treatment by Dr. Reynolds because they do not specify the treatment provided.

■ The record shows that employee testified that his in-home treatments, his hospitalization and doctor visits resulted from the aggravation of his 1988 injury. He further stated that the bills he received were the result of those in-home treatments, his hospitalization and doctor visits. His testimony was accompanied by the records of DePaul Hospital and the deposition testimony of Drs. VanRyn and Costen. Their testimony and the medical records in evidence demonstrate that there is sufficient evidence in the record to support the commission's award for: reimbursement for the cost of medicine prescribed to employee by Drs. VanRyn and Cabbabe; the bills from Premier Care Orthopedics for the services rendered by Dr. VanRyn; the bills from DePaul Hospital; Dr. Cabbabe's treatment; and the Jobst stocking and glove. However, the record

contains no evidence, other than employee's own testimony and the bills themselves, to support the commission's award of the remaining medical bills.

In *Meyer v. Superior Insulating Tape*, we held that when employee's testimony accompanies medical bills, which the employee identifies as being related to and the product of his injury, and the bills relate to the professional services rendered as shown by the medical records in evidence, a sufficient factual basis exists for the commission to award compensation. *Meyer*, 882 S.W.2d 735, 738–40 (Mo.App. E.D.1994). Essentially, where an employee submits doctor bills, but not the medical records, such bills are properly excludable because the employee has failed to show that the bills relate to the professional services rendered. *Id.*

Here, the bills for (1) Dr. Reynolds services; (2) the vascular pump; (3) intravenous antibiotic therapy by Hermann Area District Hospital, American Home Patient Care, and Columbia Regional Home Health; and (4) the prescriptions employee received from Dr. Reynolds do not satisfy this requirement. Dr. Reynolds did not testify, but his bill and the other bills list a diagnosis and the services rendered. However, this is insufficient because the bills fail to show a relationship to the services rendered by Dr. Reynolds and the other health care providers. Other than employee's testimony, there is no medical substantiation documenting employee's need for the vascular pump. Accordingly, we reverse the decision of the commission with respect to the above-mentioned medical bills.

Our disposition of employer/insurer's first contention makes it unnecessary to address the remaining contentions in their second point.

In their third point, employer/insurer claim the commission erred in holding employee's current medical condition and his need for medical treatment were caused by the 1988 accident because the overwhelming weight of the evidence indicates that employee's medical condition resulted from the 1994 accidents.

Where an employee sustains an injury arising out of and in the course of his employment, every natural consequence that flows from the injury, including a distinct disability in another area of the body, is compensable as a direct and natural result of the primary or original injury. *Lahue v. Missouri State Treasurer*, 820 S.W.2d 561, 563[2] (Mo.App. W.D.1991). Every natural consequence that flows from the injury likewise arises out of employment, unless it is the result of an independent intervening cause attributable to the employee's own intentional conduct. *Wilson v. Emery Bird Thayer Company*, 403 S.W.2d 953, 958 (Mo. App.1966). So, if the resultant disability is directly traceable to the original accident, the intervention of other causes by which the disability is increased will not bar recovery. *Manley v. American Packing Co.*, 363 Mo. 744, 253 S.W.2d 165, 169 (1952).

The record on appeal would support findings that following the 1988 injury employee returned to work in February of 1994 and worked until his July 1994 injury. When asked what problems he was experiencing with his leg during that time period, employee stated that after two days of driving to California or two days driving back from California, his leg would "swell up where I might take a day off there or two days or when I would get home sometimes I would have to take a week off and put it up before I could get it down." Further, Dr. VanRyn testified that if it was not for the 1988 injury, the 1994 injury would not have been a problem.

Further, employer/insurer's doctor, Dr. Costen, testified that the original injury of January, 1988, caused severe soft tissue damage as noted in the operative reports and records of Dr. VanRyn and that:

"The accidents of July and October of 1994 were not major accidents and he did not receive major bruising—in comparison to his original open bursting fracture [the 1988 injury], the bruises and scrapes that he had in July of 1994 and October of 1994 were trivial injuries. They were something that in a normal person, you would scrub with soap and water and maybe put a bandage on if it was bleeding a little, and go about your business. The breakdown

of tissue would not occur. If you have abnormal tissue and just bruise a little, it will break down. If tissue is barely viable, then a very trivial injury would allow the breakdown, the circulation is lost and it becomes dead and needs to be cleaned away."

Also, Dr. Costen testified that the medical care claimant is presently receiving for the spontaneous ulcers and the breakdown of the skin would not have been needed if he had not had the 1988 injury. Thus, the award is supported by competent and substantial evidence. Point denied.

AFFIRMED IN PART AND REVERSED IN PART.

RHODES RUSSELL, P.J., and KAROHL, J., concur.