Joseph HOLAUS, Employee/Appellant,

v.

WILLIAM J. ZICKELL COMPANY and
General Accident Insurance Company,
Employer/Insurer/Respondent,

and

Second Injury Fund, Respondent.

No. 71901.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 16, 1997.

Charles W. Bobinette, Uthoff, Graeber, Bobinette & O'Keefe, St. Louis, for Appellant.

Raymond J. Flunker, Evans & Dixon, St. Louis, for Respondent.

SIMON, Judge.

Joseph Holaus (Employee) appeals from an award of the Labor and Industrial Relations Commission of Missouri (Commission) dated December 18, 1996. The Commission adopted the findings of fact and conclusions of law of the administrative law judge (ALJ) and affirmed the decision denying compensation because employee failed to satisfy his burden of proving that the rotator cuff tear in his right shoulder was caused by the August 21, 1990 altercation.

On appeal, employee contends the Commission erred in that it did not award: (1) benefits to employee under the Missouri Workers Compensation Act as a result of the

August 21, 1990 work-related accident because the facts found by the Commission do not support the award, the award is not supported by competent and substantial evidence, and the award is clearly contrary to the overwhelming weight of the evidence; (2) workers compensation benefits to employee because, as a matter of law, his amended claim for repetitive trauma on the job, resulting in injury to his right shoulder, was not time barred in that employee suffered a repetitive on-the-job injury compensable under a theory of accident and the second amended claim for repetitive trauma was not barred by the applicable statute of limitations; and (3) Second Injury Fund benefits to employee because the competent and substantial evidence on the record as a whole established that the disability suffered by employee resulting from his work-related injury combining with his pre-existing permanent partial disabilities referable to his low back and knees resulted in a disability greater than the simple sum of these disabilities. We affirm.

 Our review is limited to a determination of whether the Commission's award is supported by competent and substantial evidence, viewing the record as a whole. *Smith v. Climate Engineering*, 939 S.W.2d 429, 431[1] (Mo.App. E.D.1996). We review all evidence and inferences in the light most favorable to the Commission's award. *Id.* We defer to the Commission on issues concerning credibility and weight to be given to conflicting evidence and testimony. *Id.* The Commission is free to disregard testimony of a witness even if no contradictory or impeaching evidence is introduced. *Id.* It is in the Commission's sole discretion to determine the weight to be given expert opinions, and that cannot be reviewed by this Court. *Id.* Where issues involve matters of law, we review independently. *Smith v. Climate Engineering*, 939 S.W.2d at 431[6].

The record indicates that employee, who was 44 years old at the time of the hearing, worked as a floor layer for the William J. Zickell Co. (Zickell) for the last eighteen years. He installs all types of floors. He does not do ceilings or overhead work, but he does carry heavy materials on the job site.

Ninety to ninety-five percent of his work is done at shoulder level or below.

Employee experienced problems with his right shoulder prior to August 21, 1990. In 1983, while building his house, he was on a ladder when a rung broke and he caught himself from falling with his right arm. He did not get any treatment and denied any problems thereafter. Employee was aware of a gradual onset of cracking and popping in his right shoulder that may have been present for a year prior to August 1990. This cracking and popping began irritating him and he consulted his personal physician, Dr. Robert Saitz, on July 13, 1990, regarding pain in his right shoulder, back, neck and left foot. An x-ray of employee's right shoulder was taken, but he received no treatment.

On August 21, 1990, employee, a foreman for Zickell, was working in a classroom at the Crestview School installing carpet. That morning, he realized they were running out of vinyl edging and asked Stan Huesgen to call the warehouse and order more. Huesgen called the warehouse around noon. The materials were not necessary for the completion of the work being done that day.

About 2:45 p.m. on August 21, 1990, employee was working in a classroom and observed Mark Files, who made deliveries for Zickell, in the outside hallway. He asked Files if he had the vinyl edging he had requested and Files replied "no." Files asked "who called?" and was told that Stan Huesgen had called and talked to George. Files responded "who's George?" Employee expressed his surprise that Files did not know George. Files then left the room to look for some men doing ceiling work for whom he had a delivery.

After Files left the room to look for the ceiling workers, Huesgen returned from the restroom. Employee told Huesgen that Files was there but did not have the materials for them and noted "you would think they would check the delivery tickets." Huesgen motioned to the door and Files stuck his head through the door opening and told employee "I had enough of your s___, you faggot." Employee replied "You're the faggot" and "I thought you were in charge of deliveries, I'll just get the materials myself." Files

replied "then go get it." After some more shouting, Files appeared to leave but came back in and told employee "I've had enough of your s___, lets take it outside." Employee told Files "Get the f___ out, I've got work to do." Files came into the room and began pushing employee who stated "Mark, look at yourself" and "quit pushing." Files fell into claimant's chest, employee shoved him away and Files swung his right hand, hitting claimant in the cheek. At this point, employee hit Files in the face and got him in a headlock with his left arm around Files' head. Files then shoved employee into the wall. Claimant's right shoulder struck the wall, at which point he noted that the shoulder felt like it was out of joint and he could not lift his arm because of the pain. Files left immediately thereafter.

That evening, employee went to the St. Anthony Hospital's Emergency Room seeking treatment for continued pain in his right shoulder. He was advised to contact Kennerly Orthopedic Group if he had further problems. On August 22, 1990, employee checked a couple of job sites, picked up his tools and stopped working.

On August 24, 1990, employee consulted Dr. Lawrence Kriegshauser, M.D., an orthopedic surgeon, after being referred by Dr. Saitz. Employee told Dr. Kriegshauser that he worked as a floor layer which required him to carry a lot of heavy equipment on top of his shoulders and for at least the past year he had suffered chronic right shoulder pain that had grown increasingly worse over the several weeks prior to his visit. Further, he had suffered several shoulder injuries in the past including slipping on a ladder and catching himself, and that he had fallen off a scaffold the previous summer. Employee's main complaint was that he could not lift his arm above his shoulder for the last week. Employee did not tell Dr. Kriegshauser about any altercation or falling against the wall on August 21, 1990.

Dr. Kriegshauser arranged for employee to have an arthrogram, which indicated that employee had a torn right rotator cuff. Surgery to repair his rotator cuff was performed by Dr. Kriegshauser at St. Anthony's on August 30, 1990. Following the surgery, employee used a CPM machine to keep stiffness out of his arm and later received physical therapy.

Dr. Kriegshauser diagnosed employee as having chronic impingement syndrome, chronic tendinitis and bursitis, and chronic wear and tear of the rotator cuff which resulted in a partial tear that was gradually fraying. He stated that employee suffered a 15% permanent partial disability to the right shoulder; however, he could not attribute any part of that disability to any one specific incident he had secured in history from the patient. Dr. Kriegshauser thought it could be an overuse type phenomenon and opined that the rotator cuff ruptured a week or ten days before he examined employee on August 24, 1990. In Dr. Kriegshauser's opinion, the work activities were a substantial factor and cause of the resulting medical condition and disability. Dr. Kriegshauser noted the most likely cause of a rotator cuff tear is a traction injury where there is pulling on the arm and employee did not have to suffer major trauma to cause the complete tear. Dr. Kriegshauser concluded that the blunt blow suffered by employee would not have put the kind of pull on employee's shoulder muscles necessary to cause the torn rotator cuff.

On November 6, 1990, employee filed a Claim for Compensation alleging that he "was working laying carpet when he [was] attacked by another employee of the employer, one Mark Fines (sic), and [employee] was pushed to the wall, injuring his [right] shoulder."

Dr. Kriegshauser released employee to return to work without restrictions on January 1, 1991, and saw employee for a final evaluation on February 5, 1991, when it was noted that employee was back at work, had regained full motion in his shoulder and had excellent strength.

On August 4, 1992, a First Amended Claim for Compensation was filed and stated "employee [was] laying carpet in classroom on behalf of employer when he was suddenly and unexpectedly attacked by a fellow employee without provocation by [employee], and while attempting to block punches, em-

ployee was pushed back into a blackboard on the wall injuring his right shoulder and upper right back." Employee's amended claim also included a claim against the Second Injury Fund.

On April 6, 1995, employee filed a Second Amended Claim for Compensation, which alleged a date of accident/incident of occupational disease as "August 21, 1990", injury to the right shoulder and specifically claimed:

employee had been repeatedly exposed to lifting and carrying heavy carpet on his right shoulder, causing pain and weakness. On August 21, 1990, employee was laying carpet in classroom on behalf of employer when he was suddenly and unexpectedly attacked by a fellow employee without provocation by claimant, and while attempting to block punches, employee was pushed back into a blackboard on a wall causing a sudden increase in pain to his right shoulder and upper right back.

On August 9, 1995, Dr. David T. Volarich, D.O., examined employee at the request of his attorney. Dr. Volarich secured a history from the claimant of four specific incidents involving the right shoulder: a 1983 strain/sprain of the right shoulder which resolved with rest, no treatment and no loss of work; in June, 1990 claimant noted discomfort in his right shoulder after carrying 200 pounds of carpet up to the fourth floor of a building; the incident of August 21, 1990, when his right shoulder was pushed into a concrete wall; and an incident in July, 1995 when he was struck on the shoulder by a pole. Employee also told Dr. Volarich that after his August 21, 1990 injury, he was no longer able to serve as a volunteer fire fighter or play on the company softball team, and that his back would bother him while performing household chores.

Dr. Volarich examined employee and found that he suffered from a 5% permanent partial disability of the right shoulder as a result of the June, 1990 injury. Dr. Volarich further found that employee had a 40% permanent partial disability of the right shoulder as the result of a torn rotator cuff and impingement syndrome suffered in the August 21, 1990 incident. Although Dr. Volarich found employee's impingement syndrome was due to

the incident of August 21, 1990, he also stated that more often than not it is an ongoing process, not the result of any one event, it is something that takes time to develop and was there for a much longer time than a week to ten days prior to the August 21, 1990 incident. He felt it was common to find it in workers who do repetitive overhead work such as painters or people working on an assembly line.

Dr. Volarich also reported that since the injury of August 21, 1990 employee was no longer able to play on the company softball team or work as a volunteer fireman. Dr. Volarich also reported that employee, after an April, 1993 back injury that occurred while he was installing carpet for employer, suffered increased back pain while attempting to mow the lawn, move gravel, shovel snow or bring in firewood.

The second amended claim was tried on September 8 and 21, 1995 and October 18 and 30, 1995. The parties stipulated that: employee's average weekly wage was $767.60; his compensation rate was $298.13 for temporary total disability and $178.88 for permanent partial disability; the employer paid no temporary total disability or medical benefits; employee incurred reasonable and necessary medical expenses in the sum of $13,809.30; and in the event of an award in favor of employee, he would be entitled to temporary total disability benefits for the period commencing August 22, 1990 and ending January 1, 1991.

Before the hearing, employer/insurer raised the statute of limitations defense in response to employee's second amended claim. The administrative law judge (ALJ) found the language in employee's second amended claim ambiguous, noting his confusion as to whether employee was alleging an accident, an occupational disease, or both, and allowed employer/insurer to raise the defense. Employee's attorney responded: "The only thing that I need to think through is whether I need a supplemental witness to prove the fact that they had in fact received notice of the occupational disease, although to my recollection there is no notice requirement for occupational disease."

At the hearing, employee presented the testimony of: Ron Komlos, a fellow employee, Dr. Volarich and himself. Employer presented the testimony of Mark Files, Dr. Kriegshauser and Dr. Saitz.

On January 22, 1996, the ALJ issued findings of fact and conclusions of law, finding that claimant was assaulted as an outgrowth of friction generated by the work and that the accident of August 21, 1990 arose out of and in the course of employment. The ALJ noted that employee alleged that he suffered from an occupational disease in addition to the August 21, 1990 accident and specifically found:

> The allegation of occupational disease represents a distinct and separate claim. It is covered specifically under separate sections under Missouri Workers' Compensation Law, Sections 287.063 and 287.067. The compensability of an accidental injury, as alleged separately with respect to the incident occurring on August 21, 1990, is covered by a separate section of the statute, Section 287.120.

> While [employee] suffered from symptoms and complaints involving the right shoulder prior to August 21, 1990, he did not receive any actual treatment nor did he lose any time from work until an occurrence 7—10 days prior to August 21, 1990, when he was unable to raise the right arm above the shoulder. The condition did not become disabling until that point ... [T]here is no clear break down in the credible medical evidence, Dr. Kriegshauser attributing the condition to a multitude of events and circumstances.

Further, the ALJ noted the employer and insurer raised the affirmative defense of the statute of limitations in response to employee's claim that he was suffering from an occupational disease and that raising this issue before the beginning of the hearing was sufficient notice. The administrative law judge continued, stating that "from the point when employee had become disabled in August, 1990, over four and one half years had passed," and that Section 287.430 bars any claims after two years from the date of injury or last payment on account of the injury or three years if the Report of Injury required by Section 287.380 has not been filed. The administrative law judge concluded that even if employee filed his claim pursuant to the three-year Statute of Limitations, the claim was not timely in that it was filed over four and one half years later and barred by the statute.

The ALJ also cited *Ford v. American Brake Shoe Co.*, 252 S.W.2d 649 (Mo.App. 1952), which states that the test of whether an amended claim relates back to the date of filing of the original claim is whether the amendment amplifies the claim in the original pleading or sets up a new cause of action. He distinguished this case from *Ford* in that this case does not involve recovery based on the same set of facts, but two different sets of facts and two theories of recovery. He described the two sets of facts and their resulting theories of recovery as "an accident on August 21, 1990 and recovery under workers' compensation for that accident, and repetitive trauma over years and recovery as an occupational disease."

Additionally, the ALJ stated: "employee knew about the condition of his right shoulder after he consulted Dr. Saitz in July, 1990; Section 287.063.3 provides that the Statute of Limitations for occupational diseases does not begin to run until it becomes reasonably discoverable and apparent that a compensable injury has been sustained; and that employee's knowledge of that condition in July 1990 was sufficient to fulfill that requirement."

The ALJ concluded by denying employee's claims against the employer/insurer and the Second Injury Fund, stating that "employee failed to meet his burden of proving that the condition of the right shoulder necessitating surgery, lost time and disability subsequent to August 21, 1990 was related to an accident on that date," and "although employee did show he suffered an injury on that date, he did not prove that the particular blow he suffered on that date caused the torn rotator cuff within a reasonable degree of medical probability." Finding the testimony of Dr. Kriegshauser to be persuasive and that of Dr. Volarich to be neither credible or persuasive, the ALJ noted that employee gave inconsistent testimony as to the timing of the

onset of the actual symptoms and "as far as the lack of absolutely any details of any injury on August 21, 1990." The ALJ did not address whether employee suffered from an occupational disease as he found the claim was barred by the statute of limitations.

Employee filed an appeal with the Labor and Industrial Relations Commission. On December 18, 1996, pursuant to Section 286.090 RSMo 1996 (All references hereafter will be to RSMo 1996 unless otherwise noted), the Commission affirmed the award of the ALJ, awarded no compensation in the case, and found that employee "failed to satisfy his burden of proving that the rotator cuff tear in his right should was caused by the August 21, 1990 altercation." The Commission did not address whether employee's second amended claim was barred by the statute of limitations and the award issued by the administrative law judge was attached to the Commission's decision and incorporated by reference.

■ In his first point on appeal, employee essentially contends that the Commission erred in not awarding benefits to employee as a result of the August 21, 1990 work-related accident because the facts found by the Commission do not support the award, the award is not supported by substantial and competent evidence, and the award is clearly contrary to the overwhelming weight of the evidence.

Our review of the record in a light most favorable to the Commission's award indicates the award is supported by substantial and competent evidence. Employee failed to establish that his August 21, 1991 injury was the cause of his torn right rotator cuff and Dr. Kriegshauser's testimony established: it didn't take a major trauma to cause employee's torn rotator cuff; employee did not inform him of the August 21, 1991 injury; it was unlikely that the August 21, 1991 injury caused the torn rotator cuff; and it was impossible to attribute any part of employee's disability to any one specific event in the history he received from employee. In addition, the Commission found Dr. Volarich's testimony to be conflicting and not credible. Further, while we do not weigh the evidence, we find that the award of the Commission is not contrary to the weight of the medical evidence. Point denied.

In his second point on appeal, employee essentially contends that the Commission erred in not awarding benefits to the employee because, as a matter of law, his amended claim for repetitive trauma on the job, resulting in injury to his right shoulder, is not time barred in that: (1) employee suffered a repetitive on-the-job injury which was compensable under a theory of accident; and (2) the second amended claim for repetitive trauma was not barred by the applicable statute of limitations.

■ Employee's first sub-contention is that the Commission erred in not analyzing his second amended claim under a theory of accident.

*Smith v. Climate Engineering*, 939 S.W.2d at 434, analyzing *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781, 782 (Mo. banc 1983), states:

Our Supreme Court held that the term "accident" includes not only those injuries which result from an unforeseen and unusual event but also includes those cases where the result, the injury itself, was unforeseen or unexpected. An injury is compensable when the performance of the usual and customary duties leads to physical breakdown or a change in pathology. The focus is on whether an injury has occurred, rather than what immediately proceeded the injury. The cause of an injury need not be a single event, but rather the employee is to be compensated for gradual and progressive injuries which result from repeated or constant exposure to on-the-job hazards. In essence, *Wolfgeher* permits the concept of 'accident' to encompass gradual and progressive injuries resulting from repeated exposure to on-the-job hazards. Wolfgeher did not change the necessity that the injury arise out of and in the course of employment. The injury must clearly be job related.

Here, employee's first two claims, he alleged that his injuries were the result of the attack on August 21, 1990; however, in his second amended claim for compensation filed on April 6, 1995, employee stated that in

addition to the trauma of August 21, 1990, he had been repeatedly exposed to lifting and carrying heavy carpet on his right shoulder, causing pain and weakness.

■ The evidence supports the Commission's finding that employee's attorney used the additional language in the second amended petition to indicate an occupational disease claim at the hearing before the ALJ. Further, employee did not object to the ALJ's classification of the repeated lifting as an occupational disease claim, nor did he raise the repetitive trauma claim as an accident. Whether an injury is an accident or an occupational disease is a question of fact, and there is substantial evidence to support the Commission's finding that employee was using this language to allege an occupational disease. *See Shaffer v. St. John's Regional Health Center,* 943 S.W.2d 803 (Mo.App. 1997). Employee's argument has no merit.

Employee's second sub-contention is that his second amended claim for repetitive trauma was nor barred by the applicable statute of limitations, in that: (1) employer did not raise the statute of limitations defense to his accident claim, and (2) even if the repetitive trauma constituted an occupational disease, the claim related back to the timely filed original claim and was not barred by the statute of limitations.

Section 287.430 provides:

Except for a claim for recovery filed against the second injury fund, no proceedings for compensation under this chapter shall be maintained unless a claim therefor is filed with the division within two years after the date of injury or death, or the last payment made under this chapter on account of the injury of death, except that if the report of the injury or the death is not filed by the employer as required by section 287.380, the claim for compensation may be filed within three years after the date of the injury, death or last payment made under this chapter on account of the injury or death. The filing of any form, report, receipt, or agreement, other than a claim for compensation, shall not toll the running of the periods of limitation provided in this section. . . .

■ Employer properly raised the statute of limitations defense before the hearing by the ALJ. No distinction was made by the ALJ as to whether this defense applied to the accident or occupational disease claim. Since it is enough that a defense has been litigated before the Commission, whether pleaded or not, the statute of limitations defense was properly raised. *Snow v. Hicks Brothers Chevrolet, Inc.,*480 S.W.2d 97, 100 (Mo.App.1972).

■ Employee also alleged that his second amended claim was not barred by the statute of limitations in that the claim related back to the timely filed original claim.

Although workers' compensation is a creature of statute, many common law pleading principles apply, such as the rule that whenever a claim asserted in an amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. *Koerper & Company, Inc., v. Unitel International, Inc.,* 739 S.W.2d 705, 706 (Mo. banc 1987). *See also* Holman v. Oriental Refinery, 75 N.M. 52, 400 P.2d 471, 474–75 (N.M.1965).

Employee cites *Vogt v. Ford Motor Co.,* 138 S.W.2d 684, 686 (Mo.App. E.D.1940), in support of his contention that his original claim for compensation adequately advised the employer of the nature of his claim and the additional information provided in the second amended claim simply provided additional evidentiary support for his claim of accident.

In *Vogt,* the employer contended that plaintiff, having filed an accident claim which was within the statute of limitations, could not amend his claim to allege occupational disease after the expiration of the statute of limitations. 138 S.W.2d at 686. The employee claimed that he contracted bronchial asthma at work and filed a claim for compensation wherein Item 7 stated: "Date of accident: May 21, 1935," and Item 9, "Place of accident: St. Louis, Mo." It further stated that the part of the body injured was bronchial tubes while working in a draft caused by a 40–horsepower fan, developing asthma.

After the statute of limitations expired, the employee filed an amended claim with the Commission, wherein Item 7 stated "Date of onset of disability: 5/21/35," and Item 9, "Place of: St. Louis, Mo.," and Item 11, "Parts of body injured: Respiratory tract, lungs, heart, both groins," and Item 14, "Impairment of functions of respiratory tract, of heart and of lungs, double hernia," and Item 15, "While working for employer, employee was exposed to draft of large fan which blew cold air, dust, chemicals, vapor and fumes of paint on him and which he inhaled, all of which caused, or by aggravating a pre-existing weakness, produced a condition known as bronchial asthma and the other injuries above stated."

"In *Vogt,* the employee was allowed to amend his claim because the injuries complained of in the amended claim were found to be no different from those complained of in the original claim. *Vogt,* 138 S.W.2d at 687. The amended claim was found to be more comprehensive as to just what the resultant injuries consisted of and the injuries alleged therein were found to all be the natural result of the claim set out in Item 11 of the original claim, in that the injuries complained of in Item 11 of the amended claim, i.e., "Parts of the body injured: Respiratory tract, lungs, heart, both groins," were the natural results of injuries to his bronchial tubes." *Id.*

Here, employee admitted that he knew his complaints involving the right shoulder were related to his employment when he consulted Dr. Saitz on July 13, 1990. In his first two petitions filed before the expiration of the statute of limitations, employee essentially alleged that on August 21, 1990, he was attacked by a fellow employee without provocation and pushed into the wall, injuring his shoulder. Employee filed his second amended claim on April 6, 1995, over four and one half years after the date of employee's injury, alleging his right shoulder was injured as result of the August 21, 1990 incident and repeated exposure to lifting and carrying heavy carpet on his right shoulder. The employer/insurer made no payments on account of employee's injury.

Further, unlike *Vogt,* employee attempted to do more than amplify or perfect his previous pleadings. The second amended claim asserted a claim that did not arise out of the conduct alleged to have caused employee's injuries in his first two claims for compensation.

Employee also relies on *Ford v. American Brake Shoe Co.,* 252 S.W.2d at 652 (Mo.App. 1952), which sets out the test of whether an amended claim relates back to the date of the filing of the original claim:

In considering the question of whether an amendment of a petition or complaint amounts to the commencement of a new action or proceeding with respect to the running of the statute of limitations, the general rule is that the only effect of the amendment made after the running of the limitation period is to perfect or amplify the claim set up in the original pleading, the amendment relates back to the time of the commencement of the original action so as to be saved from the bar of the statute, but that if the amendment so made sets up an entirely new and distinct claim or cause of action from that embraced in the original petition or complaint, the running of the statute in that event is not arrested but instead may be interposed in bar of the new claim or cause of action.

In *Ford,* employee filed an original claim that alleged "In October, 1948, [employee] swallowed some sand. *Ford* at 650–651." The amended claim alleged "an occupational disease by reason of the inhalation of harmful substances." *Id.* at 651. The court found that the amended claim related back to the original claim because "the actual effect of the amendment was merely to perfect the statement of the original claim; and the amendment consequently related back to the institution of the proceeding as regards to the running of the statute." *Id.* at 653.

Applying this principle here would produce a different result than *Ford* because the language used in the second amended claim creates a new and distinct claim in that it requires different proof than that of the pleading before the amendment. Accordingly, it makes no difference as to whether defendant's second amended claim alleged

accident or occupational disease, the claim was filed more than four and one half years after employee had knowledge of the condition and did not arise from the incident alleged in employee's first two petitions. Thus, employee's second amended claim establishes a new claim and does not perfect or amplify his original claim. Point denied.

In his third point on appeal, employee alleges the Commission erred in not awarding employee benefits from the Second Injury Fund because the competent and substantial evidence as a whole established that the disability suffered by employee as a result of the work-related injury, in combination with his pre-existing permanent partial disabilities referable to his low back and knees resulted in a disability greater than the simple sum of these two disabilities.

For the Second Injury Fund to be liable, it must be shown that employee has a pre-existing permanent disability and that he has received a subsequent compensable injury. Section 287.220.1 Since employee failed to establish that his injuries were the result of the incident on August 21, 1990, the Second Injury Fund is not liable. Point denied.

Judgment affirmed.

ROBERT G. DOWD, Jr., P.J., and HOFF, J., concur.